UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00088-TBR

DONALD R. PHILLIPS,                                                                                   PLAINTIFF

v.

SHASTINE TANGILAG, et al.,                                                                    DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon Motion by Plaintiff Donald Phillips for a preliminary injunction. [DN 56.] This matter is ripe for adjudication and, for the following reasons, **IT IS HEREBY ORDERED** that Phillips' Motion, [DN 56], is **DENIED**.

**A. Background**

Phillips filed this lawsuit pursuant to 42 U.S.C. § 1983, and has sued the following Defendants: (1) Shastine Tangilag, (2) Lester Lewis, (3) Ted Jefferson, (4) Cookie Crews, (5) Denise Burkett, and (6) Correct Care Solutions, (collectively, "Defendants"). [*See* DN 1.] Phillips asserts claims under the Eighth Amendment to the United States Constitution and Section Seventeen of the Kentucky Constitution, and medical malpractice claims. By way of relief, Phillips requests compensatory and punitive damages, declaratory relief, and injunctive relief in the form of medical treatment. In the instant Motion, [DN 56], Phillips now seeks a preliminary injunction from the Court, ordering Defendants "to have [Phillips'] medical condition assessed by an outside provider for the possibility of surgical intervention or other treatment…." [*Id.* at 1.]

In 2014, Phillips was assaulted by another inmate and suffered an injury to his left leg. [DN 1, at 4.] Later, his injury was diagnosed as a "probable plantaris rupture in the left lower

leg." [*Id.*] Phillips filled out a Healthcare Request form on November 26, 2014, [DN 57-1], and was seen by Tangilag on November 29. [DN 57-2.] In her notes, Tangilag stated that Phillips had "a mass on the posterior leg. Has been increasing in size for the past month. Pain is minimal." [*Id.*] Phillips received an ultrasound on the affected area on February 3, 2015, the results of which were as follows: "Examination of the medial calf. There is a soft tissue mass in the area of concern with good blood flow. However no definite clearcut margins are seen…CT scan is recommended to better evaluate this region." [DN 57-3.] Post-ultrasound notes from Tangilag three weeks later indicate that, at that time, the mass was growing and was more painful than it had been before. [DN 57-4.]

On March 13, 2015, Phillips received an off-site CT scan at Western Baptist Hospital in Paducah, Kentucky. [DN 57-5.] The findings were as follows: "A palpable marker was placed on the skin at the region of the abnormality. Between the gastrocnemius and soleus muscles, there is a heterogeneous fluid collection. This is in the normal course of the plantaris muscle and likely represents a plantaris rupture. There is no evidence of fracture or worrisome osseous lesion. No soft tissue lesions are identified. The visualized tendons and ligaments appear intact." [*Id.*] The impression was a "[p]robable plantaris rupture in the left lower leg." [*Id.*] Tangilag met with Phillips again after the CT scan results were obtained and informed him that the results would be forwarded to Jefferson, an outside orthopedic surgeon, "to see if this is something surgical that needs to be fixed. Other than the pain and the lump, he [Phillips] has full use of his leg (able to plantar flex) which is consistent with the CT scan finding." [DN 56-7.]

Jefferson saw Phillips in his office on July 3, 2015 for an examination of Phillips' left leg. [DN 57-7.] Jefferson indicated that the lump on Phillips' left leg was a hematoma. [DN 56-5, at 11-12.] In his own words, a hematoma is "bleeding that happens in the nonvascular space, like

2

under the skin or deep to the fascia in a muscle belly. It's just basically a large collection of hemorrhagic blood." [*Id.* at 12.] In Jefferson's estimation, Phillips ruptured his plantaris and the hematoma was likely the resultant effect of that injury. [*Id.*] During his examination of Phillips, Jefferson attempted to aspirate the mass, a technique wherein the treating physician inserts a syringe into the affected area to remove any fluid that has built up there. [DN 57-7.] Jefferson noted that "[n]o appreciable fluid was identified consistent with the diagnosis of chronic hematoma posterior aspect of the left leg." [*Id.*] Jefferson recommended that Phillips be given an MRI to determine what his options were. [*Id.*] The MRI was given on August 11, 2015. [DN 57-9.] The MRI indicated that the amount of fluid in Phillips' left calf had "slightly decreased since his previous CT" scan. [*Id.*] No mass was identified. [*Id.*]

Tangilag's meeting notes from August 19, 2015, wherein she talked with Phillips, state the following: "Dr. Ted Jefferson (Orthopedics) called last week stating that he does not need further treatment from a surgical standpoint. The hematoma is resolving." [DN 57-10.] Surgical debridement of the hematoma had been one of the possible courses of treatment Jefferson had discussed with Phillips. Tangilag indicated that Phillips should put moist heat on the affected area twice daily. [*Id.*] Finally, Tangilag noted that Phillips told her he had "contacted an orthopedic surgeon for a second opinion because he still 'wants to be treated,'" and that Phillips "was advised that he has the right to seek a second opinion at his own expense per policy." [*Id.*] Phillips did not see another member of the prison medical staff or CCS until late 2017 or early 2018. [DN 56-4, at 140.] This was after he filed the instant lawsuit on June 16, 2016. [DN 1.]

**B. Legal Standard**

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*

*v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). There are four factors of particular import that the Court should consider when analyzing whether to grant a preliminary injunction to the movant: "(1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served." *Int'l Longshoremen's Ass'n, AFL-CIO, Loc. Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). The Court scrutinizes each factor separately and balances them, "mak[ing] specific findings concerning each of the four factors, unless fewer are dispositive of the issue." *Id.*

In analyzing the first two factors, that is, the movant's likelihood of success on the merits and whether the injunction would save the movant from irreparable injury, the Sixth Circuit has held that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movant[] will suffer absent the stay." *Ne. Ohio Coal. for Homeless and Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Notably though, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### C. Discussion

The impetus of Phillips' claims is that Defendants, aware of the plantaris rupture he suffered when he was assaulted in 2014, failed to provide him with adequate medical care in violation of the Eighth Amendment to the United States Constitution, Section Seventeen of the Kentucky Constitution, and Kentucky common law. In Phillips' view, the injury has not resolved

itself and "he has been denied another assessment and any consideration for surgical intervention or other treatment for his condition" and, therefore, a preliminary injunction is now necessary in order to force Defendants to provide him with an outside assessment of his left leg to determine what course of treatment would be most appropriate.

### 1. Likelihood of Success

The first factor the Court will analyze is that of Phillips' likelihood of success on the merits of his claims against Defendants. *See Norfolk S. Corp.*, 927 F.2d at 903. In *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000), the Sixth Circuit Court of Appeals explained that, while the four above-listed factors present a classic balancing test for district courts, "a finding that there is simply no likelihood of success on the merits is usually fatal" to the motion. (citations omitted). However, as noted above in Part B, inherent within the first two factors is an inversely proportional relationship, meaning that the stronger the showing under factor one, the less a movant need show on factor two, and vice versa. *See Blackwell*, 467 F.3d at 1009. In his Complaint, Phillips asserted claims under the Eighth Amendment to the United States Constitution, Section Seventeen of the Kentucky Constitution, and common law negligence rules.

As an initial matter, in analyzing Phillips' likelihood of success on the merits, this Court notes that the Eighth Amendment's prohibition of cruel and unusual punishments is, substantively speaking, the same as Section Seventeen of the Kentucky Constitution. In particular, although the Eighth Amendment proscribes "cruel and unusual punishments" and Section Seventeen of the Kentucky Constitution only proscribes "cruel punishment," the Kentucky Supreme Court has described "this variation in phraseology as a distinction without a difference." *Riley v. Commonwealth*, 120 S.W.3d 622, 633 (Ky. 2003); *see also Turpin v.*

*Commonwealth*, 350 S.W.3d 444, 448 (Ky. 2011) ("Section 17 of the Kentucky Constitution accords protections parallel to those accorded by the Eighth Amendment to the U.S. Constitution."). Therefore, this Court's analysis of the alleged violations of Phillips' state and federal constitutional rights will attempt to avoid duplicitousness where possible.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). While "[t]he Constitution does not mandate comfortable prisons," the United States' founding document does not "permit inhumane ones [either], and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 832 (internal citations omitted). Relevant to this case, the Eighth Amendment "imposes duties on…officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

"An Eighth Amendment claim has an objective component and a subjective component." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he objective component requires a plaintiff to prove a 'sufficiently serious' medical need, and, [second], the subjective component requires a plaintiff to prove that the [medical professionals] had a 'sufficiently culpable state of mind.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). With respect to the objective component, a "sufficiently serious medical need…is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal citations omitted). And "[i]f the plaintiff's claim…is based on the

6

prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious,…the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.* (internal citations omitted).

"The subjective component requires a plaintiff to prove that the doctors had a 'sufficiently culpable state of mind,' equivalent to criminal recklessness." *Id.* at 591 (quoting *Farmer*, 511 U.S. at 834, 839-40). In order "[t]o be liable, the doctors need not act for the very purpose of causing harm or with knowledge that harm will result,…but they must act with more than mere negligence." *Id.* (internal citations omitted). "For example, '[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.'" *Id.* (quoting *Comstock*, 273 F.3d at 703). "An official is deliberately indifferent where she (1) 'subjectively perceived facts from which to infer substantial risk to the prisoner,' (2) 'did in fact draw the inference,' and (3) 'then disregarded that risk.'" *Id.* (quoting *Comstock*, 273 F.3d at 703).

Here, the Court cannot say that Phillips has demonstrated a high likelihood of success on the merits of his claims. After reviewing the parties' submissions, along with the relevant testimony provided by Phillips and Jefferson in their respective depositions, and the medical records which have been filed in the Record, the Court finds that Phillips has fallen short of demonstrating (a) a "sufficiently serious medical need," and (b) that his medical providers demonstrated "sufficiently culpable" states of mind. *See id.* at 590.

First, it is clear to the Court that there is no serious debate regarding whether Phillips should have had surgery to repair the plantaris tendon in his left leg. In his deposition, Jefferson, an orthopedic surgeon, testified as follows: "I'm not aware of any orthopedic surgeons that are

7

fixing plantaris tendons in the United States." [DN 56-5, at 31.] In other words, the rupture of Phillips' plantaris tendon must be separated from the hematoma in his left calf, which is the focus of Phillips' desire for a second opinion and, presumably, surgery or some other form of corrective treatment. But Jefferson further testified that the debulking of the hematoma, the surgery Phillips now believes is necessary, is an elective surgery, and "definitely not emergent." [*Id.* at 28.] Thus, it is far from certain that the complained-of injury is "sufficiently serious" to implicate the United States or Kentucky Constitutions. However, even setting aside the elective nature of the surgery sought by Phillips, the Record does not contain a great deal of evidence tending to show that any of the treating medical professionals possessed "sufficiently culpable" states of mind so as to implicate the constitutional provisions at issue.

As noted above, the named Defendants in this case are Shastine Tangilag, Lester Lewis, Ted Jefferson, Cookie Crews, Denise Burkett, and Correct Care Solutions. More information has been provided with respect to Tangilag, Jefferson, and CCS than the other Defendants. In other words, there is little in the way of evidence and/or allegations concerning any deliberate indifference Lewis, Crews, or Burkett may have manifested towards Phillips during the relevant time period. Instead, Phillips' interactions appear to have been most substantive with Tangilag, her employer, CCS, and with Jefferson. However, even then, the Court finds no strong likelihood of success on the merits of his constitutional claims.

In *Cox v. Jackson*, 579 F. Supp. 2d 831, 854 (E.D. Mich. 2008), the District Court for the Eastern District of Michigan adopted the Magistrate Judge's recommendation that a motion for a preliminary injunction be denied where the plaintiff, a prisoner, sought injunctive relief compelling "defendants to treat his abdominal hernia through surgery." In so doing, the court recognized that, in order to prevail, "the plaintiff must show that the defendants were, at the time

8

of the suit, knowingly and unreasonably disregarding an objectively intolerable risk of harm and that they will continue to do so." *Id.* (internal citations omitted). The record in *Cox* indicated that surgery was never deemed the sole option for his condition, or that surgery was ever recommended at all; it showed that "plaintiff was seen for his hernia condition on several occasions and prescribed treatment or restrictions." *Id.* at 855. Moreover, the Magistrate Judge's report noted that, "[w]hile plaintiff disagrees with the medical providers regarding the necessity of surgery to repair his hernia, such disagreement alone does not establish deliberate indifference, and plaintiff has presented no other evidence that defendants, or any other medical personnel, were deliberately indifferent to the serious medical needs relating to his hernia." *Id.*

This bears a strong resemblance to the Record in the case currently before this Court. Specifically, while Phillips testified that, during his doctor's office visit, Jefferson instructed him that "that surgery would be required," the documents in the Record present a serious dispute regarding whether this was what Jefferson actually represented to Phillips. [*See* DN 56-4, at 99-100.] Indeed, right after testifying about this conversation, Phillips also indicated that Jefferson advised him that he would have an MRI done before any decisions were made regarding surgery. [*Id.*] Further, the post-visit note completed by Jefferson states as follows: "[i]t is felt that the patient [Phillips] would be best served with evaluation in regard to his left lower extremity pathology with an MRI scan of the left lower extremity. Pending MRI results, the patient may require surgical debridement chronic hematoma posterior aspect of the left leg." [DN 56-1, at 1.] Next, after Phillips received the MRI, the Kentucky Department of Corrections ("KDOC") medical assessment provides as follows: "Dr. Ted Jefferson (Orthopedics) called last week stating that he [Phillips] does not need further treatment from a surgical standpoint. The hematoma is resolving." [DN 56-3, at 1.] In short, surgical debridement of the hematoma was

9

never deemed to be the sole, or even preferred, method of treating Phillips, but was merely hypothesized as being a course of treatment that could become necessary in the future. Additionally, as with the plaintiff in *Cox*, 579 F. Supp. 2d at 855, Phillips was seen numerous times by medical professionals, both within the confines of prison and by outside medical professionals such as Jefferson. He was provided with an ultrasound, a CT scan, and an MRI. [*See* DNs 56-1, 56-2, 56-3.] To be sure, the plaintiff in *Cox* sought a preliminary injunction for the purpose of forcing the defendants to provide him with surgery while, in this case, Phillips only seeks a second, outside opinion concerning the necessity of surgery. However, the same principle holds true.

Further, it remains "an open question whether [Phillips] will successfully prove that his medical ailments were caused by [Defendants'] deliberate indifference or whether his complaint merely involves a difference of opinion with his medical care provider for the treatment of his symptoms." *See Edwards v. Gerlach*, No. 1:13-cv-1073, 2013 WL 5719251, at *2 (W.D. Mich. Oct. 18, 2013). This applies with equal force to any claim of state law medical malpractice Phillips has asserted. "Pretrial injunctive relief is an extraordinary remedy," designed "to preserve the relative positions of the parties until a trial on the merits can be held." *Rhinehart v. Scutt*, 509 F. App'x 510, 513 (6th Cir. 2013) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). The Court has found nothing in the Record which tends to show anything more than a disagreement between Phillips and the various treating medical professionals regarding how best to go about providing him with treatment. Of course, the disagreement appears to be a strong one, and the Court does not discount Phillips' concerns with Defendants regarding the best course of treatment, and whether his best interests were attended to properly. However, the

evidence in the Record still falls well short of establishing a high likelihood of success on the merits of his claims.

## 2. Irreparable Injury

The second factor the Court will analyze is the question of "whether the injunction will save…[Phillips] from irreparable injury." *See Norfolk S. Corp.*, 927 F.2d at 903. The irreparable injury requirement is significant, and can even be determinative in a court's decision regarding whether to grant a preliminary injunction. *See Friendship Mat., Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). "[T]he harm alleged must be both certain and great, rather than speculative or theoretical." *State of Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987). This means that the injury alleged by Phillips in this case must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Wisconsin Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (internal citations omitted). Of course, the lesser the showing on prong one, the stronger case a plaintiff must make on this prong, due to the inversely proportional relationship between the two. *See Blackwell*, 467 F.3d at 1009.

The Court finds that Phillips has not presented evidence sufficient to warrant a finding that, absent the grant of a preliminary injunction by this Court compelling Defendants to deliver Phillips to a third-party physician for an outside second opinion, Phillips will presently suffer an irreparable injury. *See Norfolk S. Corp.*, 927 F.2d at 903. The Court's decision with respect to the second prong is based largely upon two things: first, Phillips has, to a large extent, failed to seek further medical treatment within the prison system. His deposition testimony bears this out:

> Q: So, from the last time you saw Dr. Tangilag in August of 2015 until when you saw Dr. Washington [sometime in late 2017 or early 2018], have you

> put in any sick-call requests or asked to speak to any physician or provider about your left calf?
>
> A: No, I have not.

[DN 56-4, at 140.] Thus, there is nothing in the Record to suggest that, by denying the instant Motion for a preliminary injunction, Phillips will suffer irreparable injury. The Court has also looked at the evidence presented by Jefferson's deposition testimony, as well as the medical forms and notes submitted by both sides. In his deposition, Jefferson testified that there is no operation to correct the torn plantaris tendon, [DN 56-5, at 31], and that the hematoma was the only operative issue with respect to Phillips' left calf, but that this procedure was elective in nature, rather than an emergency procedure requiring immediate attention. [*See id.* at 28.] Next, Jefferson, an orthopedic surgeon, expressed doubt that any pain Phillips suffers from would be relieved by this procedure, and that "it's very odd to have the level of pain he seemed to be talking about with a hematoma that happened this far in the past." [*Id.* at 22.]

The second factor guiding this Court's analysis under the second prong is the fact that it is axiomatic that Courts are hesitant to interfere or otherwise "second guess medical judgments." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). And while "it is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all,'" *id.* (quoting *Westlake*, 537, F.2d at 860 n.5), the operative questions are the plaintiff's likelihood of success on the merits and, relatedly, whether an injunction is needed in order to prevent irreparable harm to him. Phillips argues that his present condition is painful and debilitating, [DN 56, at 2], and the impetus of his argument appears to be based upon the hypothesis that a new doctor would conclude that surgery was necessary to alleviate his current symptoms, or that some other previously-unexplored option for

treatment would present itself. However, even setting aside Jefferson's doubts that a hematoma would cause pain of a magnitude that Phillips suggests, the legal standard under this prong of the preliminary injunction inquiry demands that "the harm alleged…be both certain and great, rather than speculative or theoretical." *Celebrezze*, 812 F.2d at 290. In other words, this Court would have to conclude that sending Phillips to obtain a second opinion would save him from harm that is "certain" to befall him and, further, that the harm at issue is "serious." *Id.* Phillips has not presented evidence sufficient to remove any potential harms to him out of the realm of the "speculative or theoretical" and into what the Court would describe as "certain and great." *Id.* Instead, he has speculated that an outside opinion would ultimately lead to the relief he seeks: surgery or some other course of treatment to remove the hematoma; and that this surgery or treatment would, in turn, bring an end to the pain he is currently suffering. This is not enough.

However, even assuming that Phillips has presented *some* evidence of irreparable injury, it remains insufficient to satisfy the standard. This is because, as explained above, the lesser the showing on prong one (the likelihood of success on the merits), the stronger the showing must be on prong two (irreparable injury). *See Blackwell*, 467 F.3d at 1009. And Phillips has simply failed to present evidence to the Court showing that, since the ultrasound, CT scan, and MRI, and Jefferson's subsequent recommendation, his condition has worsened to the extent that irreparable harm to him is certain and great in the absence of a grant of this preliminary injunction. *See Breach v. Prison Health Servs.*, No. 2:06-cv-1133-MEF, 2007 WL 4287802, at *7 (M.D. Ala. Nov. 30, 2007) ("Issuance of the requested injunction would substantially increase the prisoner litigation…It would encourage prisoners to 'second guess' their physicians" in situations where "a prisoner believes [his injuries] could be handled differently."). Indeed, as explained above, Phillips did not seek out any medical professionals within the prison system for over two years

after his final meeting with Tangilag. [DN 56-4, at 140.] This fact severely undermines any contentions that irreparable harm will befall Phillips should this Court refuse to grant the relief he currently seeks.

### 3. Harm to Others & the Public Interest

The Court will analyze the third and fourth factors in the same section, as the questions they present often intertwine. The third factor presents the question of "whether the injunction would harm others," and the fourth factor asks "whether the public interest would be served" by granting a preliminary injunction. *See Norfolk S. Corp.*, 927 F.2d at 903. The Court finds that the issuance of an injunction would not inflict any serious harms on others, as contemplated in *Norfolk S. Corp.*, *id.* Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The problem in this case, though, is that Phillips has not presented evidence showing that he has a strong likelihood of success on the merits of his claims. Thus, while the "public interest" factor favors the protection of individual rights, Phillips' showing was insufficient to warrant the implementation of such an extraordinary remedy as a preliminary injunction in order to guard against harms which, at this time, remain more speculative than certain.

In their Response to the instant Motion, Defendants argue that, in addition to not being warranted by the evidence in the Record, a preliminary injunction is also unnecessary on these facts: "If Phillips had alerted his care providers that the mass had not resolved as expected, they would have reassessed it. Then, based on their medical judgment and Phillips' history, they could have determined if he needed to be sent back out to a specialist for another evaluation." [DN 57, at 8.] In his Reply, Phillips does not argue that he sought and was denied further evaluations, or was ignored by prison medical staff after filing Healthcare Request forms, but

states instead that "Defendants have intentionally denied Plaintiff a reassessment of his condition that could have led to an alleviation of his ongoing pain and disability because…he filed this lawsuit?" [DN 59, at 2.] But Phillips misconstrues the central point of Defendants' assertion. Phillips intimates that Defendants affirmatively denied him medical treatment by not actively seeking him out, without Phillips initiating contact or otherwise indicating that his leg had worsened or remained in the same painful state, *i.e.*, by filing a Healthcare Request form. Phillips has demonstrated his knowledge of the prison grievance system, [DN 1-5, at 48, 54], as well as the process whereby inmates fill out Healthcare Request forms. [*Id.* at 5, 9, 51.] In short, Defendants' above assertion indicates that, should Phillips reach out through the proper intra-prison channels to obtain a new evaluation of his injury by prison medical staff, this is something that would not be denied to him, provided that he complies with prison regulations. With respect to a preliminary injunction ordering Defendants to take Phillips to an outside medical professional for a new and independent opinion concerning this injury, though, the Court must deny Phillips' Motion.

### D. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Phillips' Motion for a preliminary injunction, [DN 56], is **DENIED.**

**IT IS SO ORDERED.**

cc:     Counsel of Record