UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:16-CV-88-TBR

DONALD PHILLIPS, PLAINTIFF

v.

SHASTINE TANGILAG, et al., DEFENDANTS

**Memorandum Opinion & Order**

This matter comes before the Court upon two motions. First, Plaintiff Donald Phillips, ("Phillips"), has filed a motion for reconsideration of this Court's previous denial of his motion for preliminary injunction. [DN 61.] Second, Phillips has filed a motion for extension of time to complete discovery. [DN 63.] These matters are ripe for adjudication and are discussed below.

**A. Factual & Procedural Background**

Phillips, an inmate currently housed at the Lee Adjustment Center in Beattyville, Kentucky, initiated the instant lawsuit against Shastine Tangilag, Lester Lewis, Ted Jefferson, Cookie Crews, Denise Burkett, and Correct Care Solutions, (collectively, "Defendants"), alleging violations of the Eighth Amendment to the United States Constitution and Section Seventeen of the Kentucky Constitution, as well as medical malpractice. [DN 1.]

The following excerpt is taken from this Court's previous Opinion, Docket No. 60, wherein this Court denied Phillips's motion for preliminary injunction:

> In 2014, Phillips was assaulted by another inmate and suffered an injury to his left leg. [DN 1, at 4.] Later, his injury was diagnosed as a "probable plantaris rupture in the left lower leg." [*Id.*] Phillips filled out a Healthcare Request form on November 26, 2014, [DN 57-1], and was seen by Tangilag on November 29. [DN 57-2.] In her notes, Tangilag stated that Phillips had "a mass on the posterior leg. Has been increasing in size for the past month. Pain is minimal." [*Id.*] Phillips received an ultrasound on the affected area on February 3, 2015, the results of which were as follows: "Examination of the medial calf. There is a soft tissue

mass in the area of concern with good blood flow. However no definite clearcut margins are seen…CT scan is recommended to better evaluate this region." [DN 57-3.] Post-ultrasound notes from Tangilag three weeks later indicate that, at that time, the mass was growing and was more painful than it had been before. [DN 57-4.]

On March 13, 2015, Phillips received an off-site CT scan at Western Baptist Hospital in Paducah, Kentucky. [DN 57-5.] The findings were as follows: "A palpable marker was placed on the skin at the region of the abnormality. Between the gastrocnemius and soleus muscles, there is a heterogeneous fluid collection. This is in the normal course of the plantaris muscle and likely represents a plantaris rupture. There is no evidence of fracture or worrisome osseous lesion. No soft tissue lesions are identified. The visualized tendons and ligaments appear intact." [*Id.*] The impression was a "[p]robable plantaris rupture in the left lower leg." [*Id.*] Tangilag met with Phillips again after the CT scan results were obtained and informed him that the results would be forwarded to Jefferson, an outside orthopedic surgeon, "to see if this is something surgical that needs to be fixed. Other than the pain and the lump, he [Phillips] has full use of his leg (able to plantar flex) which is consistent with the CT scan finding." [DN 56-7.]

Jefferson saw Phillips in his office on July 3, 2015 for an examination of Phillips' left leg. [DN 57-7.] Jefferson indicated that the lump on Phillips' left leg was a hematoma. [DN 56-5, at 11-12.] In his own words, a hematoma is "bleeding that happens in the nonvascular space, like under the skin or deep to the fascia in a muscle belly. It's just basically a large collection of hemorrhagic blood." [*Id.* at 12.] In Jefferson's estimation, Phillips ruptured his plantaris and the hematoma was likely the resultant effect of that injury. [*Id.*] During his examination of Phillips, Jefferson attempted to aspirate the mass, a technique wherein the treating physician inserts a syringe into the affected area to remove any fluid that has built up there. [DN 57-7.] Jefferson noted that "[n]o appreciable fluid was identified consistent with the diagnosis of chronic hematoma posterior aspect of the left leg." [*Id.*] Jefferson recommended that Phillips be given an MRI to determine what his options were. [*Id.*] The MRI was given on August 11, 2015. [DN 57-9.] The MRI indicated that the amount of fluid in Phillips' left calf had "slightly decreased since his previous CT" scan. [*Id.*] No mass was identified. [*Id.*]

Tangilag's meeting notes from August 19, 2015, wherein she talked with Phillips, state the following: "Dr. Ted Jefferson (Orthopedics) called last week stating that he does not need further treatment from a surgical standpoint. The hematoma is resolving." [DN 57-10.] Surgical debridement of the hematoma had been one of the possible courses of treatment Jefferson had discussed with Phillips. Tangilag indicated that Phillips should put moist heat on the affected area twice daily. [*Id.*] Finally, Tangilag noted that Phillips told her he had "contacted an orthopedic surgeon for a second opinion because he still 'wants to be treated," and that Phillips "was advised that he has the right to seek a second

opinion at his own expense per policy." [*Id.*] Phillips did not see another member of the prison medical staff or CCS until late 2017 or early 2018. [DN 56-4, at 140.] This was after he filed the instant lawsuit on June 16, 2016. [DN 1.]

[DN 60, at 1-3.] On May 1, 2018, this Court denied Phillips's motion for preliminary injunction. [*Id.*] Now, Phillips has filed a motion for reconsideration of that denial, [DN 61], the merits of which are discussed in the following section.

### B. Motion for Reconsideration

#### 1. Legal Standard

"[T]he Sixth Circuit has recognized "that a district court may reconsider its decision to deny a preliminary injunction pursuant to Rule 59" of the Federal Rules of Civil Procedure. *600 Marshall Enter. Concepts, LLC v. City of Memphis*, No. 05-02865, 2006 WL 8434667, at *1 (W.D. Tenn. Feb. 27, 2006) (citing *Wong-Opasi v. Haynes*, 8 F. App'x 340, 342 (6th Cir. 2001)). "Thus, the Court finds that [Phillips's] motion for reconsideration is properly treated as a Rule 59 motion to alter or amend this Court's judgment denying a preliminary injunction." *Id.* Importantly though, "[a] motion under Rule 59[] is not an opportunity to re-argue a case," or to otherwise relitigate previously decided issues. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir 1992)) Instead, courts will grant a motion under Rule 59 only in four specific instances: (1) "if there is a clear error of law;" (2) "newly discovered evidence;" (3) "an intervening change in controlling law;" and (4) "to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

#### 2. Discussion

In his motion for reconsideration, Phillips does not contend that new evidence has been discovered, or that there has been a change in controlling law. Instead, Phillips argues that the

Court "misapprehended the controlling law" and that reconsideration of its previous decision is also necessary in order to prevent manifest injustice. [DN 61, at 2.] Specifically, he contends that (1) the Court erred in its conclusion that he had not demonstrated a high likelihood of success on the merits because it misconstrued the meaning of "serious medical need;" (2) the Court ignored Defendants' alleged admissions of deliberate indifference; (3) the Court failed to recognize that he is suffering irreparable injury; and (4) the Court has punished him for pursuing a remedy in court. [*See generally id.*] The Court will consider each of Phillips's contentions separately.

First, the Court finds no clear error in its conclusion that Phillips did not, and has not, demonstrated a high likelihood of success on the merits, nor does the Court find that reconsideration of this conclusion is necessary to prevent manifest injustice. A movant's "likelihood of success on the merits" is the first of four factors[1] in the preliminary injunction analysis, and asks the question of whether the movant has demonstrated a high likelihood of success on the merits of his or her claim(s). *See Int'l Longshoremen's Ass'n, AFL-CIO, Loc. Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). In analyzing Phillips's Eighth Amendment claim for deliberate indifference in the underlying motion, the Court found that Phillips had not met the preliminary injunction's demanding standard as it related to showing "sufficiently serious medical need," and/or that his medical providers demonstrated "sufficiently culpable" states of mind, as required by the objective and subjective components of the Eighth Amendment inquiry, respectively.[2]

---

[1] In addition to the first prong of "likelihood of the plaintiff's success on the merits," the three further factors are "whether the injunction will save the plaintiff form irreparable injury," "whether the injunction would harm others," and "whether the public interest would be served." *Norfolk S. Corp.*, 927 F.2d at 903 (citations omitted).

[2] "An Eighth Amendment claim has an objective component and a subjective component." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citations omitted). "The objective component requires a plaintiff to prove that the [medical professionals] had a sufficiently culpable state of mind." *Id.* (internal quotation marks and citations omitted). With respect to the objective component, a "sufficiently serious medical need…is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal citations omitted).

Phillips's argument for reconsideration here rests on his supposition that this Court based its conclusion primarily on the fact that Jefferson testified that the surgical procedure of debulking Phillips's hematoma was an elective surgery and "definitely not emergent." [DN 56-5, at 31 (Jefferson Dep.).] Phillips is correct in pointing out that the Court did take into consideration Jefferson's testimony concerning the elective nature of Phillips's desired procedure. However, the Court did not "rul[e] that a medical need is serious *only* if it is emergent." [DN 61, at 2 (emphasis added).] The Court never intimated that this was the case, nor did it conclude that Phillips's injury was not sufficiently serious based only upon the fact that Jefferson testified that the proposed surgery was elective in nature.

In its previous Opinion, this Court specifically acknowledged that, "[w]ith respect to the objective component [of an Eighth Amendment deliberate indifference claim], a 'sufficiently serious medical need…is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" [DN 60, at 6 (Memorandum Opinion denying Phillips's Motion for Preliminary Injunction (quoting *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013).] And although the Court went on to discuss the elective nature of the debulking procedure, it bears noting here that the last time Phillips filled out a medical request form to see any medical professional, the hematoma was seen to be resolving and no further medical treatment was determined to be needed at that time. Thus, even setting aside any reliance by this Court on the non-emergent nature of Phillips's desired surgery, the fact remains that the option of surgery was taken off the table due to his last CT scan, analyzed by Jefferson and Tangilag, which showed his condition improving, and Phillips never followed up with anyone on any prison medical staff thereafter.

This failure to follow up for multiple years after his last visit to Tangilag was one of the reasons the Court found that Phillips had not demonstrated a high likelihood of success on the merits with respect to the *subjective* prong of the Eighth Amendment inquiry to satisfy the preliminary injunction standard either. "The subjective component requires a plaintiff to prove that the doctors had a 'sufficiently culpable state of mind,' equivalent to criminal recklessness." *Santiago*, 734 F.3d at 591 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 839-40 (1994)). The Court found the Record, to date, to be lacking evidence which would demonstrate a high likelihood that any of the medical professionals involved in Phillips's care demonstrated recklessness in their care of him. Indeed, the Court specifically noted that "Phillips was seen numerous times by medical professionals, both within the confines of prison and by outside medical professionals, such as Jefferson. He was provided with an ultrasound, a CT scan, and an MRI." [DN 60, at 10.] Moreover, the last time he ever requested to see a medical professional concerning his hematoma, it was resolving and no further medical treatment was deemed to be necessary. Thereafter, Phillips did not seek treatment from anyone within the prison system for over two years. [DN 56-4, at 140.] This severely undermined Phillips's contention that Defendants acted with sufficiently culpable states of mind in failing to adequately treat him.

Finally, with respect to the likelihood-of-success prong, Phillips points to this Court's use of *Cox v. Jackson*, 579 F. Supp. 2d 831 (E.D. Mich. 2008), claiming that it is "discredited authority." [DN 61, at 4.] In *Cox*, the District Court for the Eastern District of Michigan denied the plaintiff's motion for preliminary injunction for failure to demonstrate a high likelihood of success on the merits where the plaintiff sought a court order compelling the defendants to treat his hernia through surgery. *Cox*, 579 F. Supp. 2d at 854-55. Contrary to Phillips's contention, *Cox* remains good law in the Sixth Circuit, which is presumably why, in his argument, he cites to

the decisions of other circuits on the issue of hernias. But even apart from this, many of the cases to which Phillips cites do not go to the specific reason why this Court actually utilized *Cox* in its previous Opinion. This Court cited to *Cox* for the settled rule of law that disagreements between doctor and patient, without other evidence of deliberate indifference, cannot rise to a level sufficient to implicate the Eighth Amendment. The *Cox* court dealt with a disagreement between the plaintiff, who thought that hernia surgery was necessary, and the medical providers, who apparently thought that surgery was not the correct path to take. *Id.* at 855. Thus, the issue of the plaintiff's ailment in *Cox*, a hernia, was not the point the Court took from the case. Rather, the facts of *Cox* tracked those of this case quite closely, in that it is apparent that Phillips remains set on undergoing surgery for his hematoma, while multiple medical professionals (Jefferson and Tangilag) instructed him that the hematoma was resolving and surgery was not the correct option at that time. Again though, Phillips never followed up with anyone thereafter.

Next, Phillips argues that the Court ignored Defendants' alleged admissions of deliberate indifference. [DN 61, at 6.] Phillips refers to two specific instances, the first of which is the following excerpt from Jefferson's deposition testimony:

> Q: And do you recall what you told that person in that phone conversation?
>
> A: That I thought that it would spontaneously resolve and there was no need for any surgical intervention.
>
> Q: Okay. Did you tell them or this person in that conversation, though, that if it did not resolve, he needed to come back for re-evaluation or something like that?
>
> A: Yeah, I mean, that was basically the treatment plan was the idea that, you know, well, of course, if he doesn't get better, bring him back, and we can always, you know, operate on it –
>
> Q: Okay.
>
> A: -- if we have to.

> \*\*\*
>
> A: Well, I mean, Assessment and Plan, the plan is to not operate on him and let the hematoma resolve. It kind of goes without stating that if the patient doesn't get better, you would bring him back.

[DN 56-5 (Jefferson Dep., pp. 16, 18).]

Phillips uses this piece of testimony, along with a statement from Defendants' response to his motion for preliminary injunction, to argue that manifest injustice has been done. [DN 61, at 6.] The piece of Defendants' response to which Phillips cites is as follows: "[t]he preliminary injunction Phillips requests is not only unwarranted—it is wholly unnecessary. Phillips is, and always was, free to submit a healthcare request and have his care providers reassess the mass in his left calf—but he chose not to do so—preferring litigation instead." [DN 57, at 8.]

Upon reviewing the Record anew, the Court finds that no manifest injustice has resulted from this Court's denial of Phillips's motion for preliminary injunction and, further, that Phillips is incorrect in his contention that Defendants somehow admitted deliberate indifference with their above statement in response to his initial motion. Rather than admitting deliberate indifference, the Court found that Defendants were making the point that it would have been impossible for them to have been deliberately indifferent to a medical ailment of which they had no knowledge, as Phillips never came to see any medical professionals to inform them that the hematoma had reversed course and was no longer resolving. Defendants' statement also served to point out the fact that Phillips's failure to seek medical treatment for approximately two years before ultimately filing a lawsuit brings into question the seriousness of his condition. Finally, the statement highlighted the proper channels through which an inmate may receive medical treatment, both inside and outside the facility, and intimated that if Phillips were to go through those channels, he would find no resistance and that his motion was therefore unnecessary.

Phillips further contends that the Court's analysis in its previous Opinion was "fatally flawed" because it "fail[ed] to consider any developments in the record subsequent to the filing of this lawsuit." [DN 61, at 6.] Of course, this is incorrect, because the Court *did* take into account proper prison procedure for filling out medical forms to be seen by prison medical staff, and noted that, to date, that is, subsequent to the filing of this lawsuit, Phillips has not reached out to anyone regarding the hematoma that he contends has not resolved. Nothing in Phillips's argument with respect to Defendants' alleged admissions to acting with deliberate indifference would lead this Court to reconsider its decision. Here, the Court also makes specific note of the fact that motions for reconsideration "are not an opportunity for the losing party to offer additional arguments in support of its [original] position," as Phillips has done here. *Elec. Ins. Co. v. Freudenberg-Nok, General P'ship*, 487 F. Supp. 2d 894, 902 (W.D. Ky. 2007); *see also Engler*, 146 F.3d at 374 ("[P]arties should not use [motions for reconsideration] to raise arguments which could, and should, have been made before judgment issued.").

Next, Phillips argues that the Court failed to recognize that Phillips is suffering an irreparable injury. [DN 61, at 8.] Phillips contends that the Court is not being asked to second guess medical judgments, as "[t]here is no difference of opinion as to whether [Phillips] is entitled to a reassessment for surgical intervention at this point…." [DN 61, at 8.] Contrary to Phillips's contention, though, Defendants have not actually conceded that Phillips is entitled to a reassessment at this time; although Defendants do not address Phillips's contention substantively in their response, Phillips's entitlement to a reassessment remains in dispute by virtue of the fact that he felt the need to file a motion for preliminary injunction in the first place seeking that reassessment. Also, a motion for reconsideration "is not intended as a vehicle to relitigate previously considered issues." *Keweenaw Bay Indian Cmty. v. United States*, 940 F. Supp. 1139

(W.D. Ky. 1996). The Court already addressed the differences in opinion held by Phillips, Tangilag and Jefferson in its previous Opinion denying Phillips's motion for preliminary injunction, and sees no reason to now change course, or to consider this issue anew.

Lastly, Phillips contends that the Court, in denying his motion for preliminary injunction, has effectively punished him for pursuing a remedy in court. [DN 61, at 9.] In Phillips's view, this Court's denial of his original motion "effectively imposes a new requirement that an inmate continue to pursue an administrative remedy after exhaustion. This turns the exhaustion requirement of the [Prison Litigation Reform Act] into an interminable process." [*Id.* at 11.] Phillips goes on, "[t]he Court's decision will cause great confusion among and prejudice to inmate litigants, and will provide a safe harbor to defendants who, like the Defendants in this case, have openly admitted their retaliatory intent and motivation." [*Id.*]

Again, as explained above, motions for reconsideration "should not [be] use[d]…to raise arguments which could, and should, have been made before judgment issued." *Engler*, 146 F.3d at 374. But even setting this aside, Phillips's reasoning is flawed. First, although Phillips claims that Defendants admitted to not treating him *because* he filed suit, the Court finds that the facts do not bear out this conclusion. Instead, Defendants merely argued that Phillips could have filed a medical request form (and still could), but filed a lawsuit instead. Second, Phillips's contention that he "was denied any further treatment for his condition after his hematoma had remained unresolved for eight months" is a strained interpretation of the evidence adduced in this case so far. [DN 61, at 10.] As the Court noted previously, the last time Phillips sought treatment, he was seen by Tangilag, at which time the hematoma on his leg was resolving, according to both Tangilag and Jefferson. The Record does not indicate that any of Defendants were on notice that, thereafter, the hematoma did not end up resolving on its own. To be denied something

presupposes that a request was made, and the evidence demonstrates that Phillips made no such requests after the time at which the hematoma allegedly stopped resolving, nor has he to date.

Additionally, Phillips argues that "[h]e requested additional treatment but was advised that he had 'the right to seek a second opinion at his own expense per policy,'" and that "[t]he message was clear – [Phillips] would receive no further treatment. Asking again would have been futile." [*Id.*] However, Tangilag's doctor's note states that "Jefferson (Orthopedics) called last week stating that he [Phillips] does not need further treatment from a surgical standpoint. The hematoma is resolving," but that Phillips "says he has contacted an orthopedic surgeon for a second opinion because he still wants to be treated." [DN 1-5, at 39.] Next, it says "[h]e was seen in the room with HSA Jill Shelton. He was advised that he has the right to seek a second opinion at his own expense per policy. He has been appropriately worked up and sent to a specialist." [*Id.*] A reading of Tangilag's note does not necessarily produce the conclusion that Phillips reaches in his instant motion. The note indicates that the expert on the issue, Jefferson, saw improvement and no need for surgery, but that Phillips indicated his disagreement and voiced his desire to seek additional outside treatment, and that Tangilag instructed him on proper procedure for doing so (*i.e.*, he may do so but at his own expense). Nothing in the note would lead this Court to unequivocally conclude that Phillips reaching out again once the hematoma allegedly did not resolve would have been "futile," as Phillips suggests. Further, while the implication of Phillips's contention that "[t]he message was clear" that he "would receive no further treatment" is that Defendants were acting deliberately indifferent towards his injury, the Court finds that this is not necessarily the case. The only reason given in the note for why Phillips would not receive further treatment was because, in the opinion of Jefferson, the hematoma was resolving.

11

Finally, the Court sees no way in which its denial of Phillips's motion for preliminary injunction "effectively imposes a new requirement that an inmate continue to pursue an administrative remedy after exhaustion." [*See* DN 61, at 11.] Phillips argues that, "[a]bsent a finding of a failure to exhaust, [Phillips] was entitled to believe he had done so, and that any further internal efforts to obtain treatment would be futile and would not be required." [*Id.*] This is an erroneous statement of the law or, at the very least, an incomplete one. "Section 1997e(a) [of the Prison Litigation Reform Act] says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them" before filing suit in federal court. *Brock v. Kenton Cnty., Kentucky*, 93 F. App'x 793, 798 (6th Cir. 2004). Moreover, if Phillips has here intimated that the grievance process was somehow unavailable to him, he would be required to show that the prison's grievance process "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief," that the "administrative scheme…[is] so opaque that it becomes, practically speaking, incapable of use," or that prison administrators have "thwart[ed] [him and other] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1858-60 (2016). Phillips did not demonstrate this with specific facts, either in his original motion or here in his motion for reconsideration.

However, the issue of exhaustion of administrative remedies does not go to the heart of Phillips's motion for preliminary injunction, or to his motion for reconsideration, and so Phillips's contention that the Court has somehow imposed a post-exhaustion requirement that inmates continue to pursue internal remedies is incorrect and largely irrelevant. As explained above, the Court found that Phillips had not met the demanding standard imposed on parties who

seek preliminary injunctions, in part, because he never followed up with anyone working in the medical department after his hematoma allegedly reversed course and ceased resolving, nor has he sought any medical treatment at all in the roughly three years since that time. These facts cast doubt upon the irreparable injury prong of the preliminary injunction inquiry, as well as the subjective prong of the Eighth Amendment inquiry under the likelihood-of-success prong. And nothing presented in Phillips's motion for reconsideration would give this Court cause to now change course and reconsider its previous decision. In short, after an analysis the parties' new submissions and a reexamination of the Record of this case, the Court finds that no clear error of law was made and that no manifest injustice would result from lack of reconsideration. Accordingly, Phillips's motion must be denied.

In light of this Court's denial of Phillips's motion for reconsideration, which coincided with the termination of some of this case's pretrial deadlines, the Court finds it necessary to order a telephonic conference in order to discuss scheduling matters.

### C. Conclusion

For the reasons stated in this Opinion, **IT IS HEREBY ORDERED** that Phillips's motion for reconsideration of this court's previous decision denying his motion for preliminary injunction [DN 61] is **DENIED.**

**IT IS FURTHER ORDERED** that a telephonic scheduling conference is set for **July 31, 2018 at 10:00 a.m. Central Standard Time**. The Court will place the call.

**IT IS SO ORDERED.**

cc:	Counsel of Record