UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:16-CV-00088-TBR

DONALD R. PHILLIPS,                                                              PLAINTFF

V

SHASTINE TANGILAG, MD, et al.,                                                   DEFENDANT

**MEMORANDUM OPINION ORDER**

Plaintiff Donald R. Phillips has two related motions before the Court: Plaintiff's Motion for Injunctive Relief (Order Requiring Plaintiff's Transport for Medical Examination and Treatment), (R. 105), and Motion for Leave to File Second Amended Complaint, (R. 108). The Defendants, Shastine Tangilag, Lester Lewis, Ted Jefferson, and Correct Care Solutions, have responded to the motion for injunctive relief but have not yet responded to the motion for leave to amend. For the reasons that follow, the Court must HEREBY DENY Phillips's motion for injunctive relief, (R. 105). As will be discussed further below, Phillips's motion to amend, (R. 108), is consequently HEREBY DENIED AS MOOT.

BACKGROUND

Donald R. Phillips is an inmate within the Kentucky Department of Corrections. (R. 1). In 2014, Phillips was assaulted by another inmate and suffered an injury to his left leg. (*Id.*). Later, his injury was diagnosed as a "probable plantaris rupture in the left lower leg." (*Id.*) Phillips filled out a Healthcare Request form on November 26, 2014, (R. 57-1), and was seen by Dr. Shastine Tangilag on November 29. (R. 57-2). In her notes, Tangilag stated that Phillips had

1

"a mass on the posterior leg. Has been increasing in size for the past month. Pain is minimal." (*Id.*). Phillips received an ultrasound on the affected area on February 3, 2015, the results of which were as follows: "Examination of the medial calf. There is a soft tissue mass in the area of concern with good blood flow. However no definite clearcut margins are seen…CT scan is recommended to better evaluate this region." (R. 57-3). Post-ultrasound notes from Tangilag three weeks later indicate that, at that time, the mass was growing and was more painful than it had been before. (R. 57-4).

On March 13, 2015, Phillips received an off-site CT scan at Western Baptist Hospital in Paducah, Kentucky. (R. 57-5). The findings were as follows: "A palpable marker was placed on the skin at the region of the abnormality. Between the gastrocnemius and soleus muscles, there is a heterogeneous fluid collection. This is in the normal course of the plantaris muscle and likely represents a plantaris rupture. There is no evidence of fracture or worrisome osseous lesion. No soft tissue lesions are identified. The visualized tendons and ligaments appear intact." (*Id.*). The impression was a "[p]robable plantaris rupture in the left lower leg." (*Id.*). Tangilag met with Phillips again after the CT scan results were obtained and informed him that the results would be forwarded to Ted Jefferson, an outside orthopedic surgeon, "to see if this is something surgical that needs to be fixed. Other than the pain and the lump, he [Phillips] has full use of his leg (able to plantar flex) which is consistent with the CT scan finding." (R. 56-7).

Jefferson saw Phillips in his office on July 3, 2015 for an examination of Phillips' left leg. (R. 57-7). Jefferson indicated that the lump on Phillips' left leg was a hematoma. (DN 56-5, at 11-12). In his own words, a hematoma is "bleeding that happens in the nonvascular space, like under the skin or deep to the fascia in a muscle belly. It's just basically a large collection of hemorrhagic blood." (*Id.* at 12). In Jefferson's estimation, Phillips ruptured his plantaris and the

hematoma was likely the resultant effect of that injury. (*Id.*). During his examination of Phillips, Jefferson attempted to aspirate the mass, a technique wherein the treating physician inserts a syringe into the affected area to remove any fluid that has built up there. (R. 57-7). Jefferson noted that "[n]o appreciable fluid was identified consistent with the diagnosis of chronic hematoma posterior aspect of the left leg." (*Id.*). Jefferson recommended that Phillips be given an MRI to determine what his options were. (*Id.*). The MRI was given on August 11, 2015. (R. 57-9). The MRI indicated that the amount of fluid in Phillips' left calf had "slightly decreased since his previous CT" scan. (*Id.*). No mass was identified. (*Id.*).

Tangilag's meeting notes from August 19, 2015, wherein she talked with Phillips, state the following: "Dr. Ted Jefferson (Orthopedics) called last week stating that he does not need further treatment from a surgical standpoint. The hematoma is resolving." (R. 57-10). Surgical debridement of the hematoma had been one of the possible courses of treatment Jefferson had discussed with Phillips. Tangilag indicated that Phillips should put moist heat on the affected area twice daily. (*Id.*). Finally, Tangilag noted that Phillips told her he had "contacted an orthopedic surgeon for a second opinion because he still 'wants to be treated,'" and that Phillips "was advised that he has the right to seek a second opinion at his own expense per policy." (*Id.*). Phillips did not see another member of the prison medical staff or CCS until late 2017 or early 2018—well after he had already filed the instant suit. (R. 56-4)

On June 16, 2016, Phillips filed the instant lawsuit pursuant to 42 U.S.C. § 1983. Phillips asserts claims under the Eighth Amendment to the United States Constitution and Section Seventeen of the Kentucky Constitution, and medical malpractice claims. By way of relief, Phillips requests compensatory and punitive damages, declaratory relief, and injunctive relief in the form of medical treatment.

On March 25, 2018, Phillips filed a Motion for Preliminary Injunction requesting that he be seen by an outside physician so as to alleviate his ongoing pain and suffering. (R. 56). The Court denied that motion for various reasons. One of those reasons was that Phillips had failed to utilize intra-prison channels to be reassessed after it became clear to Phillips that his injury was allegedly no longer resolving itself, as it had been the last time he saw prison medical personnel. (R. 60). The Court noted that the Defendants appeared to indicate that should Phillips reach out through the proper intra-prison channels to obtain a new evaluation of his injury by prison medical staff, this is something that would not be denied to him, provided that he complied with prison regulations. (*Id.*).

On January 14, 2019, after having attempted to utilize these intra-prison channels, Phillips moved for an extension of time in which to designate an expert medical witness to be used at trial. In that same motion, Phillips also sought an order from the Court requiring the Defendants to transport Phillips from where he was incarcerated to that medical expert to be evaluated for trial purposes and receive treatment. The Defendants opposed both the extension and the transport. Regarding the transport, the Defendants argued that transporting an inmate always presents a security risk, and that the Court should defer to the Kentucky Department of Corrections concerning such matters. The Defendants also claimed Phillips was free to obtain an expert medical opinion at any time pursuant to Kentucky Department of Corrections' Policies and Procedures § 13.2. However, according to § 13.2, the medical expert would have to come to Phillips and evaluate him where he was incarcerated. The Court granted Phillips his requested extension but, deferring to the Kentucky Department of Corrections, denied Phillips's request that the Court compel the Defendants to transport him to an outside medical expert.

On January 20, 2019, Phillips moved for leave to amend his Complaint to add Dr.

Clifford as a Party Defendant. Dr. Clifford is a medical professional at Little Sandy Correctional Complex. According to Phillips, after the Court had denied his first motion for preliminary injunction, which spurred him to again seek treatment for his leg injury through intra-prison channels, he was seen by Dr. Clifford. During that encounter, Clifford allegedly told Phillips that "she could not 'abide people like [Plaintiff]', that all Plaintiff wanted was for 'higher-ups to spend thousands of dollars' on surgery that 'in her opinion' would not 'take' anyway, and that all Plaintiff wanted was free money." (R. 76). After filing a prison grievance, Phillips was again seen by Little Sandy medical staff. They agreed with Dr. Clifford that surgery was not recommended. (*Id.*). On March 18, 2019, The Court granted Phillips leave to amend and added Dr. Clifford as a Party to this action. (R. 89).

On March 20, 2019, after a telephonic conference held with the Parties, the Court ordered as follows:

> Counsel for Plaintiff shall locate and consult with a medical expert prior to April 24, 2019. That medical expert shall determine, upon review of Plaintiff's medical records, whether he or she could adequately assess Plaintiff's medical condition using the medical facilities at Northpoint Training Center [where Phillips is currently incarcerated]. If that medical expert can adequately assess Plaintiff's medical condition using the medical facilities at Northpoint Training Center, he or she shall travel to Northpoint Training Center to conduct such an assessment. If that medical expert determines that he or she cannot adequately assess Plaintiff's medical condition using the medical facilities at Northpoint Training Center, Plaintiff's Counsel shall notify the Defendants and give them opportunity to make such arrangements as are necessary to transport the Plaintiff to the offices of the aforementioned medical expert. If Defendants deny such transport, the Court, upon proper motion, will determine how to proceed.

(R. 92).

On May 1, 2019, Phillips's counsel informed the Court that although he had contacted multiple physicians, none of them were willing to assess Phillips outside their own facilities due to constraints imposed by their respective medical malpractice insurance contracts. Apparently, coverage would not extend to assessments or procedures conducted outside the physicians'

5

respective offices. Upon being so informed, the Court ordered as follows: "The Court grants Plaintiff's oral request to file a renewed motion to compel Northpoint Training Facility to transport the Plaintiff to an outside medical facility where he may be examined by a Doctor." (R. 103).

On May 20, 2019, instead of filing a renewed motion to compel—as instructed by the Court—Phillips moved again for an injunction requiring Phillips to be transported to an outside medical facility "for examination and treatment of his condition by a qualified physician" in order to "relieve his ongoing physical and mental pain and suffering." (R. 105). The Defendants responded arguing that Phillips lacks standing to request injunctive relief from the Defendants because, as private medical contractors, they do not have the authority to effectuate an inmate's transport. (R. 106). Phillips replies that, according to the contract between Defendant Correct Care Solutions and the Kentucky Department of Corrections, the Defendants do indeed have the power to effectuate Phillips's transfer. (R. 107).

In addition, Phillips has filed for leave to amend his Complaint to add Warden Brad Adams as a Party Defendant solely to the extent that he may be necessary in effectuating Phillips's transportation. (R. 108). The Defendants have not yet responded to Phillips's Motion for Leave to Amend.

STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). There are four factors of particular import that the Court should consider when analyzing whether to grant a

6

preliminary injunction to the movant: "(1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served." *Int'l Longshoremen's Ass'n, AFL-CIO, Loc. Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). The Court scrutinizes each factor separately and balances them, "mak[ing] specific findings concerning each of the four factors, unless fewer are dispositive of the issue." *Id.*

In analyzing the first two factors, that is, the movant's likelihood of success on the merits and whether the injunction would save the movant from irreparable injury, the Sixth Circuit has held that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movant[] will suffer absent the stay." *Ne. Ohio Coal. for Homeless and Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citing *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). Notably though, "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

Beside these standard requirements, the Prison Litigation Reform Act limits the scope of injunctive relief a prisoner may receive:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)

DISCUSSION

Phillips has two motions before the Court: his motion to amend, and his motion for injunctive relief. The Court will first address the latter, and as will be made clear below, need not address the former.

I. The Court Must Deny Phillips's Motion for Injunctive Relief.

Instead of filing a renewed motion to compel North Point Training Facility to transport Phillips to a medical expert to be examined for the purposes of trial—as instructed by the Court—Plaintiff's counsel has filed what is essentially a second motion for preliminary injunction, (R. 105). Notably, in that motion—instead of requesting transportation so as to procure an expert medical opinion for the purposes of trial—Phillips requests a court order requiring him to be "transported to the Lexington office of Aptiva for examination and treatment of his condition by a qualified physician" in order to "relieve his ongoing physical and mental pain and suffering." (*Id.*). As such, even ignoring the Article III standing issue raised by the Defendants, the Court has no choice but to deny Phillips's motion upon considering the appropriate factors, as required by law.

A. Phillips's Has Not Demonstrated Likely Success on the Merits.

The first factor the Court must consider in deciding whether to issue a preliminary injunction is whether Phillips has demonstrated likely success on the merits of his claims. And while this factor is just one among others that the Court must consider, it is the most crucial in that "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Here, Phillips asserts Eighth Amendment cruel and unusual punishment and common law negligence claims.[1]

---

[1] Phillips also asserts claims under Section Seventeen of the Kentucky Constitution. However, as already noted in the Court's last opinion denying Phillips injunctive relief, there is no distinction between Eighth Amendment cruel

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citations omitted). While "[t]he Constitution does not mandate comfortable prisons," the United States' founding document does not "permit inhumane ones [either], and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 832 (internal citations omitted). Relevant to this case, the Eighth Amendment "imposes duties on...officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)).

"An Eighth Amendment claim has an objective component and a subjective component." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he objective component requires a plaintiff to prove a 'sufficiently serious' medical need, and, [second], the subjective component requires a plaintiff to prove that the [medical professionals] had a 'sufficiently culpable state of mind.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). With respect to the objective component, a "sufficiently serious medical need...is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal citations omitted). And "[i]f the plaintiff's claim...is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious,...the plaintiff must place verifying medical evidence in the record to establish the

---

and unusual punishment claims and Section Seventeen claims. Thus, the Court will treat them as one and the same so as to avoid duplication.

9

detrimental effect of the delay in medical treatment." *Id.* (internal citations omitted).

"The subjective component requires a plaintiff to prove that the doctors had a 'sufficiently culpable state of mind,' equivalent to criminal recklessness." *Id.* at 591 (quoting *Farmer*, 511 U.S. at 834, 839-40). In order "[t]o be liable, the doctors need not act for the very purpose of causing harm or with knowledge that harm will result, ...but they must act with more than mere negligence." *Id.* (internal citations omitted). "For example, '[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.'" *Id.* (quoting *Comstock*, 273 F.3d at 703). "An official is deliberately indifferent where she (1) 'subjectively perceived facts from which to infer substantial risk to the prisoner,' (2) 'did in fact draw the inference,' and (3) 'then disregarded that risk.'" *Id.* (quoting *Comstock*, 273 F.3d at 703).

Little has changed since the last time the Court determined that Phillips had not demonstrated a likelihood of success on the merits of his claims. In denying Phillips's first motion for preliminary injunction, the Court determined that Phillips had not demonstrated a likelihood of success on the merits of either his Eighth Amendment or state law claims because the Court had "found nothing in the Record which tends to show anything more than a disagreement between Phillips and the various treating medical professionals regarding how best to go about providing him with treatment." (R. 60). Since that time, the only thing that has changed is that Phillips has seen more medical professionals through intra-prison channels, all of whom have come to the same conclusion—surgery is not recommended and may not be effective. (R.76). What has not changed, is the complete lack of evidence in the Record to support anything other than a disagreement between Phillips and the—now even more—medical

professionals that have decided he does not require surgery. As the Court has already explained, an inmate's difference of opinion concerning his diagnosis or course of treatment in relation to his symptoms does not constitute an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Nor does it give rise to state law negligence claims. This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 U.S. App. LEXIS 6617, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997). Thus, the Court must again find that Phillips has failed to demonstrate a high likelihood of success on the merits of his claims.

B. Phillips Has Not Demonstrated Irreparable Injury.

The next factor the Court must consider in determining whether to Grant Phillips a preliminary injunction is whether he has demonstrated that he will suffer an irreparable injury should the injunction be denied. Like the first factor, this one can also be determinative. *See Friendship Mat., Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). Particularly relevant here, "the harm alleged must be both certain and great, rather than speculative or theoretical." *State of Ohio ex rel. Celebrezze v. Nuclear Reg. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).

Unlike the first factor, circumstances relevant to the Court's analysis regarding this factor have changed since the Court last denied Phillips's request for preliminary injunction. The fact that Phillips had failed to seek further medical treatment within the prison system suggested to the Court that Phillips would suffer no irreparable injury should the injunction be denied. At this time, Phillips has indeed sought further medical treatment within the prison system and been denied surgery. However, this is not enough to convince the Court that Phillips will suffer irreparable injury should the Court deny his request to be treated by an outside physician. As the

Court pointed out in denying Phillips's first motion for preliminary injunction, Dr. Jefferson, an orthopedic surgeon, expressed doubt that any pain Phillips suffers from would be relieved by surgery. (R. 60). Furthermore, by Phillips's own admission, Dr. Clifford told Phillips that the surgery would not take in his opinion. Finally, after grieving Dr. Clifford's decision and seeing medical providers at Little Sandy Correctional Complex for a second time, Phillips was again told that surgery was not recommended. Thus, the Court cannot conclude that denying Phillips's proposed injunction will, with certainty, result in his irreparable injury. Phillips merely speculates that the Court's denial will result in injury because he speculates that an outside physician might recommend surgery, which might relieve his alleged pain and suffering. Such speculation is not enough to warrant injunctive relief. *See State of Ohio ex rel. Celebrezze*, 812 F.2d at 290. Furthermore, as the Court explained in denying Phillips's first request for injunctive relief, for the Court to accept Phillips's speculation, it would necessarily have to second guess the medical judgment of numerous medical professionals. The Court is simply not in a position to do so. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Thus, this factor, like the first, weighs against Mr. Phillips.

    C. Granting the Injunction Potentially Causes Harm to Others, and It Does Not Serve the Public Interest.

As the last two factors often overlap one another, the Court will consider them together. Phillips argues that ordering him to be transported to an outside physician for a second opinion that may, or may not, lead to the alleviation of his alleged pain and suffering causes no harm and serves the public interest. The Court disagrees.

First, transportation of an inmate is not free. It cost the prison, and ultimately the public, money. Second, transporting an inmate always presents the potential for escape, which in turn

presents a danger to the public. The Court takes neither of these costs lightly. And while Phillips is correct that "it is always in the public interest to prevent the violation of a party's constitutional rights," as explained above, he has not done enough to demonstrate that his rights have indeed been violated. (R. 105 (citing *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1964)). As the first two factors weigh heavily against Phillips, the Court will not linger here on the last two. Suffice it say these factors do not tilt the scales in Phillips's favor so as to offset the first two. The Court must deny Phillips's requested injunction.

    D. In Denying Phillips's Motion for Injunctive Relief, his Motion to Amend is Moot.

Phillips has moved for leave to amend his Complaint to add Warden Brad Adams of Northpoint Training Facility as a Party Defendant in response to the Defendants' response to his motion for injunctive relief. He states: Warden Adams is added solely for the purposes of injunctive relief, should his authority be necessary to effectuate Plaintiff's transport to an outside specialist for examination, diagnosis and treatment of the condition made the subject of this litigation. Because the Court has denied Phillips injunctive relief, his motion for leave to add Warden Adams as a Party Defendant is now moot and denied as such.

Should Phillips move to renew his motion to compel transportation, as discussed below, and if Phillips feels that Adams is a necessary party with regard to the action requested in that motion, he is free to refile an appropriate motion for leave to amend in conjunction with the renewed motion to compel transportation.

  II.    Even If the Court Construed Phillips's Motion for Injunctive Relief as a Renewed Motion to Compel—as the Court Instructed Phillips to File—The Court Would be Forced to Deny Phillips's Request as It Has Been Made.

First, the Court cannot construe Phillips's motion for injunctive relief as a renewed motion to compel. While the Court may be tempted to do so in an effort to move this already

stagnant litigation toward a resolution, to do so would be to call an apple an orange. Phillips is represented by competent counsel, and such a stretch by the Court would be improper.

But even if the Court were to do so, it would still be forced to deny any such motion because instead of seeking an expert medical opinion for the purposes of trial, Phillips's motion makes clear that he wishes to be transported to an outside physician for "treatment of his condition by a qualified physician" in order to "relieve his ongoing physical and mental pain and suffering." While the Court may be amenable to Phillips being transported for the purposes of securing a medical examination from an expert witness for the purposes of trial, it is unwilling to order his transport for treatment to relieve his alleged ongoing physical and mental pain and suffering. The two are not equivalent.

Although, case law on this exact issue is scant, the Court's position is supported. In *Cabrera v. Williams*, No. 4:05CV3121, 2007 U.S. Dist. LEXIS 66480 (D. Neb. Sep. 7, 2007), a Nebraska district court came to the same conclusion when presented with similar circumstances. In *Cabrera*, A *pro se* plaintiff and inmate had an Eighth Amendment claim pending against a medical contractor providing services for the Nebraska Department of Correctional Services. *Id.* at *1. After having exhausted his administrative remedies through the prison, the plaintiff filed a motion for "medical examination outside of prison." *Id.* at *2. But because the Plaintiff's motion was "clearly aimed at securing treatment for his medical conditions, rather than endeavoring to secure the assistance of an expert witness or performing relevant discovery" the Court was forced to deny the plaintiff's request. *Id.* at *4. However, the Court went on to make clear that "[u]pon confirmation that the plaintiff has hired the doctor and the doctor has agreed to serve as an expert witness, and upon a proper showing that an examination is necessary for the expert to give an expert opinion, [the Court would] consider ordering that the defendants make the

plaintiff available for an examination by a doctor who is retained as an expert witness." *Id.* at *8.

The Court finds the Nebraska Court's holding instructive. Just like the plaintiff in *Cabrera*, Phillips's motion for injunctive relief makes clear that the primary purpose for his request is to be treated by an outside physician to alleviate his alleged pain and suffering—not to be examined for the purposes of trial. As such, just like the *Cabrera* court, this Court finds that it must deny Phillips's motion. However, also like the *Cabrera* court, this Court will allow Phillips the opportunity to again renew his motion to compel transportation to an outside physician upon confirmation that the plaintiff has hired a doctor and that doctor has agreed to serve as an expert witness, and upon a proper showing that an examination is necessary for the expert to give an expert opinion. *See De'Lonta v. Clarke, Civil Action No*. 7:11-cv-00257, 2013 U.S. Dist. LEXIS 122872, at *7 (W.D. Va. Aug. 28, 2013) ("compelling motion to make inmate plaintiff available for medical examination by his own expert and stating that 'it is beyond cavil that a plaintiff may retain its own expert medical witness to examine himself and render opinion testimony at trial.'") (citing *Silverstein v. Fed. Bureau of Prisons*, 2009 U.S. Dist. LEXIS 47646, 2009 WL 1451684, *4 (D. Colo. 2009)). Upon such a showing, the Defendants and all those parties potentially affected, including the Kentucky Department of Corrections, shall be given the opportunity to responds if they so wish.

The Court understands that with its decision, it extends an already protracted litigation. However, the Court finds the interests of justice best served in allowing Phillips to properly present his case by having the opportunity to retain a qualified expert should he wish to do so. Frankly, the Court does not understand why such an expert could not come to the prison and examine the Plaintiff at no expense to the Defendants or the Kentucky Department of Corrections. If the examining physician felt some testing or imaging was required and not

available at the prison, the Plaintiff could file the appropriate motion. Ultimately, the interests of justice weigh heavier on the Court than its preference for efficiency. That being said, the Court finds that it has already extended its leniency nearly to its limit. This shall be Mr. Phillips's final opportunity to procure an expert to be used at trial. If Phillips cannot demonstrate to the Court that he has retained such an expert within the time allotted to him below, not only will the Court refuse to order him transported, but Phillips will proceed without an expert witness.

CONCLUSION

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1) Phillips's Motion for Injunctive Relief (Order Requiring Plaintiff's Transport for Medical Examination and Treatment), (R. 105), is **DENIED**.
2) Phillips's Motion for Leave to File Second Amended Complaint, (R. 108), is **DENIED AS MOOT**.
3) Phillips shall have **TWENTY-ONE (21)** days from the date of this Memorandum Opinion & Order to again renew his motion to compel transportation to an outside physician and provide the Court confirmation that he has hired a doctor and that doctor has agreed to serve as an expert witness and that doctor believes an examination is necessary to form an expert opinion.
4) Defendants shall have file **FOURTEEN (14)** days in which to file a response thereto.
5) A **telephonic conference REMAINS SET** for July 2, 2019, at 1:45 p.m. Central Time. Counsel must call 1-877-848-7030 then give the Access Code 2523122 and #, then when prompted press # again to join the call.

**IT IS SO ORDERED.**

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

July 1, 2019

cc. counsel