UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00088-TBR

**DONALD R. PHILLIPS**                                                     **PLAINTFF**

**v.**

**SHASTINE TANGILAG, MD, et al.,**                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Dr. Ted Jefferson's ("Dr. Jefferson") Motion for Summary Judgment. [DN 150.] Plaintiff Donald Phillips ("Phillips") has responded. [DN 160.] Dr. Jefferson has replied. [DN 177.] Dr. Jefferson also filed a supplemental Motion for Summary Judgment. [DN 170.] Phillips has responded [DN 184] and Dr. Jefferson has replied. [DN 189.] As such, these matters are ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Dr. Jefferson's Motion for Summary Judgment [DN 150] is **GRANTED**. Dr. Jefferson's Supplemental Motion for Summary Judgment [DN 170] is **DENIED AS MOOT**.

**I. Background**

This case has a lengthy factual and procedural history. Therefore, the Court will limit the facts to those applicable to Dr. Jefferson.

Phillips filed this lawsuit pursuant to 42 U.S.C § 1983 on June 16, 2016. [DN 1.] Phillips asserts claims under the First, Fifth, Eighth, and Fourteenth Amendments. [DN 89 at 9.] He also asserts state law claims of ordinary negligence and medical negligence. [*Id.* at 10.]

1

In 2014, Phillips was assaulted by another inmate and suffered an injury to his left leg. [DN 1 at 4.] Later, his injury was diagnosed as a "probable plantaris rupture in the left lower leg." [*Id.*] On March 13, 2015, Phillips received an off-site CT scan at Western Baptist Hospital in Paducah, Kentucky. [DN 57-5.] The findings were as follows: "A palpable marker was placed on the skin at the region of the abnormality. Between the gastrocnemius and soleus muscles, there is a heterogeneous fluid collection. This is in the normal course of the plantaris muscle and likely represents a plantaris rupture. There is no evidence of fracture or worrisome osseous lesion. No soft tissue lesions are identified. The visualized tendons and ligaments appear intact." [*Id.*] The impression was a "[p]robable plantaris rupture in the left lower leg." [*Id.*] Dr. Tangilag met with Phillips again after the CT scan results were obtained and informed him that the results would be forwarded to Dr. Jefferson, an outside orthopedic surgeon, "to see if this is something surgical that needs to be fixed. Other than the pain and the lump, he [Phillips] has full use of his leg (able to plantar flex) which is consistent with the CT scan finding." [DN 56-7.]

Dr. Jefferson saw Phillips in his office on July 3, 2015 for an examination of Phillips' left leg. [DN 57-7.] Dr. Jefferson indicated that the lump on Phillips' left leg was a hematoma. [DN 56-5, at 11-12.] In his own words, a hematoma is "bleeding that happens in the nonvascular space, like under the skin or deep to the fascia in a muscle belly. It's just basically a large collection of hemorrhagic blood." [*Id.* at 12.] In Dr. Jefferson's estimation, Phillips ruptured his plantaris and the hematoma was likely the resultant effect of that injury. [*Id.*] During his examination of Phillips, Dr. Jefferson attempted to aspirate the mass, a technique wherein the treating physician inserts a syringe into the affected area to remove any fluid that has built up there. [DN 57-7.] Dr. Jefferson noted that "[n]o appreciable fluid was identified consistent with the diagnosis of chronic hematoma posterior aspect of the left leg." [*Id.*] Dr. Jefferson recommended that Phillips be given an MRI to

determine what his options were. [*Id.*] The MRI was given on August 11, 2015. [DN 57- 9.] The MRI indicated that the amount of fluid in Phillips' left calf had "slightly decreased since his previous CT" scan. [*Id.*] No mass was identified. [*Id.*]

Dr. Tangilag's meeting notes from August 19, 2015, wherein she talked with Phillips, state the following: "Dr. Ted Jefferson (Orthopedics) called last week stating that he does not need further treatment from a surgical standpoint. The hematoma is resolving." [DN 57-10.] Dr. Jefferson also represented that if the hematoma did not resolve, Phillips needed to return for re-evaluation. [DN 150-2 at 16: 10-17.]

Dr. Jefferson received a letter from Phillips approximately two months later stating the pain had not subsided and he had not received treatment. [DN 160-5 at PageID 1309-1310.] Dr. Jefferson did not respond to Phillips letter. [DN 150-2 at 20: 3-8.]

Dr. Jefferson now moves for summary judgment on the claims against him.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact

could reasonable find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. Discussion

#### A. Constitutional Claims

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992). Dr. Jefferson argues Phillips' claim must fail under both factors.

#### 1. Acting Under Color of Law

"Private individuals may be considered state actors if they exercise power 'possessed by virtue of state law' and if they are 'clothed with the authority of state law.'" *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner." *West v. Atkins*, 487 U.S. 42, 55–56 (1988). Both parties rely primarily on two cases to support their position—*Carl* and *Scott*.

In *Carl,* Carl was arrested and subsequently examined by employees of the Community Mental Health Services ("CMH"). 763 F.3d at 594. All mental health services were contracted out to CMH. *Id.* Dr. Jawor was an independent contractor for CMH and examined Carl once. *Id.* The district court found Dr. Jawor was not a state actor. *Id.*

The circuit court stated, "[w]hether Dr. Jawor was employed directly by the state does not control whether she was a state actor—*West* eliminates any ambiguity on this point." *Id.* at 597 (citing *West,* 487 U.S. at 55-56). The Court further stated, "finding no state action—would incentivize the state to contract out, piece by piece, features of its prison healthcare system. In turn, each private actor providing medical care could disclaim liability under § 1983, downplaying their role in the prison system as so nominal that they should not be considered state actors. *Id.* at 597–98. Therefore, Dr. Jawor was deemed a state actor. *Id.*

In *Scott v. Ambani,* Scott was "referred to Dr. Sullivan, a radiation oncologist, for treatment." 577 F.3d 642, 645 (6th Cir. 2009). Dr. Sullivan argued she was not a state actor, the district court agreed and dismissed the claim. *Id.* at 648. Dr. Sullivan did not have a contract with the state and all treatment was "determined by her own training, experience, and independent medical judgment. Neither MDOC nor Correctional Medical Services had any influence, direction, or control over the care and treatment of any patient." *Id.* at 649. Dr. Sullivan also provided the treatment at the hospital. *Id.* The Court affirmed the district court's finding that Dr. Sullivan was not a state actor.

Here, there is no dispute that Dr. Jefferson did not have a contract with the State to treat inmates. The Court agrees with Phillips that Dr. Jefferson does not have to be an official state employee to be a state actor. However, the Court disagrees with Phillips that his contractual/employment situation is wholly irrelevant to the inquiry.

Dr. Tangilag referred Phillips to Dr. Jefferson to determine if surgery was needed. Dr. Jefferson examined Phillips once in person and determined an MRI was necessary. After reviewing the MRI, Dr. Jefferson determined no surgery was needed and the hematoma would likely resolve on its own. If it did not resolve, Phillips could return to Dr. Jefferson.

Phillips seeks to distinguish *Scott* from the present case due to Scott being referred to an oncologist group rather than a specific doctor. However, the Court finds this to be a distinction without a difference. Like Dr. Sullivan, Dr. Jefferson provided treatment to Phillips in his office and he had no contractual relationship with the state. Phillips argues the state controlled Dr. Jefferson's treatment plan because he recommended Phillips come back if the hematoma did not resolve. However, this Court is not aware of any case law where a private physician has been deemed a state actor with such limited interaction. In *Carl,* although Dr. Jawor's treatment of Carl was limited, the state contracted all mental health services to her place of employment. Therefore, Dr. Jawor, and her place of employment, played a central role in treatment of mental health. In *West v. Atkins,* Dr. Atkins, a private physician, treated West over a period of several months by placing different casts on West's leg. 487 U.S. 42, 44 (1988).

The Court is persuaded by *Thomas v. Garner*. In *Thomas,* Thomas was referred to Dr. McKnight, a urologist at Jackson Memorial Hospital. 2018 WL 4384587 *2 (M.D. Tenn. Sept. 13, 2018). Dr. McKnight informed Thomas that he only needed fluid to be drained and sent Thomas back to the medical providers at the prison. *Id.* The Court found Dr. McKnight was not a state actor because Thomas had not shown Dr. McKnight "had any particular function in the state system". *Id.* at 3. Here, if the Court were to deem Dr. Jefferson a state actor, it would extend the holdings of *Carl* and *West*. Every private physician would be subject to § 1983 liability after any contact with an inmate and that is not the purpose of either *Carl* or *West*. Therefore, this Court

6

finds Dr. Jefferson was not a state actor. "The vast majority of federal courts agree that treatment by a non-contract private physician, nurse, or hospital upon referral or on an emergency basis does not satisfy the requirements for state action necessary to bring a claim under 42 U.S.C. § 1983." *Dorn v. Powers*, 2011 U.S. Dist. LEXIS 149683, *17-19 (S.D. Ill. Dec. 30, 2011). This claim must be dismissed due to Dr. Jefferson not being a state actor.

### 2. Violation of Constitutional Right

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The objective component mandates a sufficiently serious medical need. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 897 (quoting *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208 (1st Cir. 1990)). The subjective component regards prison officials' state of mind. *Id*. The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted). "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001).

The Sixth Circuit has also noted that in the context of deliberate-indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Verifying medical evidence is required when claims involve "minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore*, 390 F.3d at 898.

### a. Objective Component

Here, treatment was not mandated by a physician. Dr. Jefferson opined that the hematoma would likely resolve on its own but if it did not, Phillips could return. This also is not a medical need that a lay person would easily recognize the necessity for a doctor's attention. *See id.* at 897 (collecting cases). However, courts have also found that "the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" can also amount to a serious medical need. *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Phillips has complained of pain where he "can only walk short distances, and/or stand for short periods of time before the leg begins to ache like an impacted tooth from knee to ankle." [DN 1 at 5.] Dr. Jefferson seemingly does not argue Phillips did not have a serious medical need. Therefore, Phillips has shown a serious medical need.

### b. Subjective Component

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. On summary judgment, it is appropriate for the Court to determine

whether Dr. Jefferson could have inferred a substantial risk to Phillips—not whether he did. *See Clark-Murphy v. Foreback,* 439 F.3d 280, 290 (6th Cir. 2006).

Phillips argues a jury could infer Dr. Jefferson was deliberately indifferent because "he knew Phillips had a serious medical need, knew that Phillips was not getting the treatment Jefferson had said Phillips needed, and did nothing more to help him." [DN 160 at 13.] Dr. Jefferson cites to several district court cases with similar facts that this Court finds persuasive.

In *Vreeland v. Fisher,* Dr. Johnson, a private physician, performed a surgery on Vreeland. 2014 U.S. Dist. LEXIS 138746 *11 (D. Colo. Sept. 29, 2014). After Dr. Johnson performed the surgery, Vreeland was returned to the custody of the prison. *Id.* at 13. Vreeland wrote letters to Dr. Johnson complaining of "swelling, gas, pain, stiffness, serious bladder problems, continuous diarrhea on a daily basis, weight loss…[and] serious daily pains and nausea". *Id.* Dr. Johnson did not provide any follow-up treatment. *Id.* The Court found Vreeland failed to state a claim for deliberate indifference because "plaintiff pleads no facts that suggest that defendant Johnson was capable of ordering [the prison] to refer plaintiff to her for a follow-up visit." *Id.*

In *Wright v. Genovese,* Wright was referred to Dr. Miller to perform a coronary bypass surgery. 694 F. Supp. 2d 137, 144 (N.D.N.Y. Feb. 17, 2010). Miller forwarded post-operative treatment plans to the medical unit at the prison. *Id.* Wright stated he wrote letters to Dr. Miller with "questions about his care" but Miller never responded. *Id.* at 147. Dr. Miller only recalled receiving one letter but stated he did not respond "because he assumed [Wright's] care was being overseen by a cardiologist who would have referred the inmate back to the surgeon if the plaintiff was suffering complications." *Id.* Wright contended Dr. Miller provided constitutionally inadequate medical care by"(1) failing to ensure that his post-operative instructions were received and followed by the medical staff at Shawangunk; (2) failing to respond to the letters plaintiff

9

wrote to the surgeon complaining about his post-operative care; and (3) failing to conduct a follow-up examination of the plaintiff." *Id.* at 155.

The Court found Dr. Miller "had no control over if and when DOCS would refer [an] inmate to him for a follow-up examination after the inmate had been returned to the care of the prison medical staff." *Id.* at 156. Therefore, the Court found Dr. Miller could "not be liable under Section 1983 for not getting involved earlier in plaintiff's post-operative care." *Id.*

Here, like *Wright* and *Vreeland*, Dr. Jefferson did not respond to Phillips' complaint about the care he was receiving. There is no evidence that Dr. Jefferson could have ordered the prison to bring Jefferson in for a follow-up appointment. Phillips cites to *Parzyck v. Prison Health Services, Inc.* to support his position. In *Parzyck,* Parzyck requested two consultations with an orthopedic specialist. 290 Fed. App'x. 289, 291 (11th Cir. 2008). Dr. Cherry, a prison physician, denied Parzyck's request to be seen by a specialist. Here, Dr. Jefferson did not deny Phillips outside consultation. Dr. Jefferson was not a physician within the prison who had the ability to schedule Phillips for outside consultation. Therefore, the Court finds Dr. Jefferson did not act with deliberate indifference.

### 3. Qualified Immunity

The Court need not address Dr. Jefferson's claim that he is entitled to qualified immunity because the Court has already found Dr. Jefferson was not a state actor and Dr. Jefferson did not act with deliberate indifference.

### 4. Retaliation

Phillips claims he is being denied treatment in retaliation for filing this lawsuit. In support, Phillips relies on a statement made in a response to Phillips' Motion for Preliminary Injunction. In that response, Defendants stated, "Phillips is, and always was, free to submit a healthcare request

10

and have his care providers reassess the mass in his left calf—but he chose not to do so—preferring litigation instead." [DN 57 at 8.] However, this filing was made on behalf of Defendants Cookie Crews, Denise Burkett, Correct Care Solutions, LLC, Dr. Lester Lewis and Dr. Shastine Tangilag. [*Id.* at 1.] This statement is not attributed to Dr. Jefferson. Therefore, there is no evidence of retaliation by Dr. Jefferson and this claim must be dismissed.

## B. State Law Claims

Phillips argues Dr. Jefferson was negligent on a theory of abandoning the treatment of Phillips. Phillips further argues that he does not need expert testimony for a jury to reasonably find Dr. Jefferson abandoned Phillips. In support, Phillips primarily cites to *Johnson v. Vaughn,* 370 S.W. 2d 591 (Ky. 1963).

In *Johnson,* Johnson was taken to the hospital after being shot in the neck. *Id.* at 593. Dr. Vaughn was called by a nurse to tend to Johnson. *Id.* Upon Dr. Vaughn's arrival, he found Johnson had a punctured trachea and a bullet in the back of his neck. *Id.* However, Dr. Vaughn opted to return home because he believed Johnson had stabilized but instructed the hospital supervisor to call if Johnson's condition worsened. *Id.* at 594.

Johnson's condition worsened and Dr. Kissinger was called to the hospital. *Id.* at 595. Dr. Kissinger opined Johnson was dying. *Id.* Dr. Kissinger informed Johnson's family that they needed to get Dr. Vaughn to release Johnson as a patient so he could treat Johnson. *Id.* Dr. Vaughn refused to release Johnson as a patient after multiple calls. *Id.* Dr. Vaughn eventually released Johnson as a patient; however, Johnson subsequently died. *Id.*

The Court stated,

> "It is a rule of general acceptance that a physician is under the duty to give his patient all necessary and continued attention as long as the case requires it, and that he should not leave his patient at a critical stage without giving reasonable notice or making suitable arrangements for the attendance of another physician, unless the relationship is terminated

> by dismissal or assent. Failure to observe that professional obligation is a culpable dereliction."

*Id.* at 596. Johnson had expert testimony to prove Dr. Vaughn did in fact abandon Johnson at a critical stage in violation of his duty and he was negligent in the treatment of Johnson. *Id.* at 596-597. The Court did not find expert testimony on this issue to be unnecessary as Phillips states.

It is true that "malpractice can be proved without expert testimony 'where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts.'" *Engle v. Clarke,* 346 S.W.2d 13, 16 (Ky. 1961) (quoting *Butts v. Watts,* 290 S.W.2d 777, 779 (Ky. 1956)). In the case at bar however, the Court does not find this case to present one of those circumstances. Phillips does not have expert testimony to state Dr. Jefferson abandoned Phillips at a critical stage in his treatment. Dr. Zack Stearns has testified that Dr. Jefferson acted within the standard of care even without taking any steps to contact Phillips after receiving the letter. [DN 173-4 at 48-49.] Phillips has not presented any expert testimony that Dr. Jefferson's alleged abandonment of Phillips caused any further harm to Phillips. Without such evidence, Phillips cannot sustain his claim.

## C. Exhaustion of Administrative Remedies

In his supplemental motion for summary judgment, Dr. Jefferson argues Phillips did not exhaust his administrative remedies. Phillips argues Dr. Jefferson has waived this defense and it is too late in litigation to dismiss on this ground. However, the Court need not address this issue as dismissal is warranted on other grounds.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Dr. Jefferson's Motion for Summary Judgment [DN 150] is **GRANTED**. Dr. Jefferson's Supplemental Motion for Summary Judgment [DN 170] is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 1, 2020

cc: counsel