UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE No. 5:16-cv-00088-TBR

DONALD R. PHILLIPS                                                                                       PLATINTIFF

v.

SHASTINE TANGILAG, MD, *et al.,*                                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendants Correct Care Solutions, LLC, Dr. Lester Lewis, and Dr. Angela Clifford (collectively "Defendants"), Motion for Summary Judgment. [DN 162.] Plaintiff Donald Phillips ("Phillips") has responded. [DN 185.] Defendants have replied. [DN 195.] As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 162] is **GRANTED**.

### I. Background

Phillips filed this lawsuit pursuant to 42 U.S.C § 1983 on June 16, 2016. [DN 1.] Phillips asserts claims under the First, Fifth, Eighth, and Fourteenth Amendments. [DN 89 at 9.] He also asserts state law claims of ordinary negligence and medical negligence. [*Id.* at 10.]

In 2014, Phillips was assaulted by another inmate and suffered an injury to his left leg. [DN 1 at 4.] On May 20, 2014, Phillips filed a sick call stating he was suffering from "leg swelling and discolored from calf to ankle." [DN 164 at PageID 2023.] May 26, 2014, Phillips was seen, and he stated, "swelling has improved." [*Id.* at PageID 2030.] Further, he denied "any numbness,

tingling, loss of [range of motion] or weakness. Denies any pain." [*Id.*] It was recommended that Philips elevate his leg "as much as possible." [*Id.*]

On November 26, 2014, Phillips filed a healthcare request stating, "I have a lump in my left calf that is growing larger: from the size of an egg (appx.) to the size of a racquet ball". [*Id.* at PageID 2044.] Phillips was seen on December 11, 2014 by Dr. Tangilag to address this concern. [*Id.* at PageID 2034-2035.] Dr. Tangilag noted the mass was approximately five inches in diameter and ordered an ultrasound. [*Id.*] Phillips had the ultrasound on February 3, 2015. [*Id.* at PageID 2040.] The ultrasound found a soft tissue mass in the area of concern with good blood flow." [*Id.*] A CT Scan was recommended. [*Id.*]

On March 13, 2015, Phillips received an off-site CT scan at Western Baptist Hospital in Paducah, Kentucky. [DN 164 at PageID 2042.] The findings were as follows: "A palpable marker was placed on the skin at the region of the abnormality. Between the gastrocnemius and soleus muscles, there is a heterogeneous fluid collection. This is in the normal course of the plantaris muscle and likely represents a plantaris rupture. There is no evidence of fracture or worrisome osseous lesion. No soft tissue lesions are identified. The visualized tendons and ligaments appear intact." [*Id.*] The impression was a "[p]robable plantaris rupture in the left lower leg." [*Id.*] Dr. Tangilag met with Phillips after the CT scan results were obtained and informed him that the results would be forwarded to Dr. Jefferson, an outside orthopedic surgeon, "to see if this is something surgical that needs to be fixed. Other than the pain and the lump, he [Phillips] has full use of his leg (able to plantar flex) which is consistent with the CT scan finding." [*Id.* at PageID 2032.]

Dr. Jefferson saw Phillips in his office on July 3, 2015 for an examination of Phillips' left leg. [*Id.* at PageID 2036.] Dr. Jefferson indicated that the lump on Phillips' left leg was a hematoma. [*Id.*] In his own words, a hematoma is "bleeding that happens in the nonvascular space,

2

like under the skin or deep to the fascia in a muscle belly. It's just basically a large collection of hemorrhagic blood." [DN 56-5 at 12.] In Dr. Jefferson's estimation, Phillips ruptured his plantaris and the hematoma was likely the resultant effect of that injury. [*Id.*] During his examination of Phillips, Dr. Jefferson attempted to aspirate the mass, a technique wherein the treating physician inserts a syringe into the affected area to remove any fluid that has built up there. [DN 164 at PageID 3026.] Dr. Jefferson noted that "[n]o appreciable fluid was identified consistent with the diagnosis of chronic hematoma posterior aspect of the left leg." [*Id.*] Dr. Jefferson recommended that Phillips be given an MRI to determine what his options were. [*Id.*] The MRI was given on August 11, 2015. [*Id.* at PageID 2037.] The MRI indicated that the amount of fluid in Phillips' left calf had "slightly decreased since his previous CT" scan. [*Id.*] No mass was identified. [*Id.*]

Dr. Tangilag's meeting notes from August 19, 2015, wherein she talked with Phillips, state the following: "Dr. Ted Jefferson (Orthopedics) called last week stating that he does not need further treatment from a surgical standpoint. The hematoma is resolving." [*Id.* at PageID 2031.] Dr. Tanglilag also noted Phillips said he had "contacted an orthopedic surgeon for a second opinion because he still 'wants to be treated.'" [*Id.*] Dr. Jefferson represented that if the hematoma did not resolve, Phillips needed to return for re-evaluation. [DN 150-2 at 16: 10-17.] Phillips contends Dr. Tangilag did not inform him that he would need to be reassessed if the hematoma did not resolve. He states he understood Dr. Tangilag's statement that he needed no further treatment from a surgical standpoint as denying him any further treatment.

Dr. Jefferson received a letter from Phillips approximately two months later stating the pain had not subsided and he had not received treatment. [DN 160-5 at PageID 1309-1310.] Dr. Jefferson did not respond to Phillips letter. [DN 150-2 at 20: 3-8.] Phillips argues Defendants have denied him the treatment Dr. Jefferson recommended.

3

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonable find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

## III. Discussion

### A. Merits of Phillips' Claims

**1. Eighth Amendment Claim Against CCS, Dr. Lewis, and Dr. Clifford**

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992).

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The objective component mandates a sufficiently serious medical need. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 897 (quoting *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208 (1st Cir. 1990)). The subjective component regards prison officials' state of mind. *Id.* The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted). "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001).

The Sixth Circuit has also noted that in the context of deliberate-indifference claims:

[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Verifying medical evidence is required when claims involve "minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore*, 390 F.3d at 898.

In the present case, Dr. Tangilag met with Phillips to review Dr. Jefferson's recommendations and informed Phillips that no surgery was needed at that time. Phillips also stated in his deposition that Dr. Tangilag told him "that there would be no surgery, because that she had spoken with Dr. Jefferson". [DN 162-1 at 103.] Phillips was informed that he had "the right to seek a second opinion at his own expense per policy." [DN 164 at PageID 2031.] After this visit with Dr. Tanglilag, Phillips states he did not seek further treatment because he interpreted Dr. Tangilag's statement as denying any further treatment. [DN 162-1 at 140.] The crux of Phillips' argument is Defendants denied him adequate treatment by not scheduling any follow-up appointments, notwithstanding his failure to submit a sick call request.

The Court previously found Phillips pled enough facts to evidence a serious medical need. [*See* DN 222.] However, there is a lack of evidence to meet the subjective component.

"Deliberate indifference is a state of mind akin to criminal recklessness: the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (internal quotations omitted). Here, Phillips did not file a sick call related to his leg injury for more than two years after his appointment with Dr. Tangilag. Phillips belief that he would be denied treatment if requested is not enough to excuse his failure to seek any treatment for that period of time.

Phillips filed a Healthcare Request regarding his left leg on April 30, 2018. [DN 165 at PageID 2141.] Phillips was seen on May 2, 2018 and Ibuprofen was prescribed. [*Id.*] Later that

6

same day, an ultrasound was ordered. [*Id.* at PageID 2056.] An ultrasound was performed the next day and found "[n]o evidence for deep venous thrombosis…[and] [t]he Doppler waveforms were unremarkable." [*Id.* at PageID 2136.] Phillips was seen on May 17, 2018 to go over the ultrasound and was to follow-up as needed. [DN 166 at PageID 2260-2261.]

Phillips was seen again on August 1, 2018 and APRN Tyara Hughes referred Phillips to physical therapy. [DN 167 at PageID 2299-2300.] After several sessions of physical therapy, Phillips informed the physical therapist that therapy was working because he no longer had "the numbness after walking a distance." [*Id.* at PageID 2292.] Phillips was discharged from therapy a few days later because he stated he was "[n]ot going to get better until [he got] that surgery the one doctor said I needed." [*Id.* at PageID 2289.] Phillips again asked to be re-evaluated for surgery on his leg. [DN 164 at PageID 2014.] Phillips was seen by Dr. Clifford on October 9, 2018. [DN 166 at PageID 2224.] During that appoint Dr. Clifford informed "the plantaris muscle isn't responsible for much and with his age there would not be anyone that would even try to fix that muscle. This happened in 2014 and if it was to be fixed it should have been done there." [*Id.*] Dr. Clifford then reviewed Phillips' medical file and opined that the "[t]reatment plan was sound at that time." [*Id.*] Phillips was informed that "[n]o surgical intervention is needed or recommended. This plan of care NSAIDs, continue PT exercises as instructed is in keeping with latest evidence based practice." [*Id.* at PageID 2225.]

There is ample evidence that each time Phillips went through the proper protocols to seek treatment, he received it. Phillips claims he was not reassessed, but he was. He just did not receive reassessment by a surgeon. Although Phillips repeatedly stated he wanted and needed surgery, there is no expert evidence stating it was necessary. "In light of the fact that Plaintiff has presented nothing more than a disagreement, albeit a strong one, regarding the appropriate course of

7

treatment for his [leg], this cannot as a matter of law rise to the level of 'cruel and unusual punishment' as required under the Eighth and Fourteenth Amendments." *Daniel v. Harper,* 2017 WL 6522090 *8 (W.D. Ky. Dec. 19, 2017). Further, there is no evidence that the treatment Phillips received fell below the standard of care or caused any further harm to Phillips.

The causation of Phillips' continued pain is at issue. Prior to the altercation in 2014, Phillips complained about left leg pain and a knot in his lower left calf on June 5, 2010. [DN 164 at PageID 2052.] Phillips received treatment in the form of medication and did not file other medical requests regarding his leg until 2014. [*Id.* at PageID 2019.] Further on October 22, 2014, Phillips filed a Healthcare Request regarding "lower back pain radiating down my left leg. This is the result of an old injury I suffered at OCCC where I fell out of a top bunk, landing flat on my backside." [*Id.* at PageID 2045.] Although Drs. Jefferson, Tangilag, and Lewis all stated it is possible Phillips' continued pain could be due to the hematoma, there is no evidence they have acted with deliberate indifference with regard to the hematoma. The only expert testimony on record states Defendants' actions were within the standard of care. Even if the pain Phillips continues to experience is due to the hematoma, Phillips has not presented any medical evidence that his pain has been caused by any inactions or actions by Defendants. Without verifying evidence, Phillips cannot sustain this claim.

Defendants' expert, Dr. Finnan, has stated Dr. Lewis and Dr. Clifford were not negligent in rendering treatment to Phillips and the treatment was within the standard of care. [DN 147-2.] Phillips has not provided any evidence to the contrary notwithstanding the ample time this Court has given Phillips to develop expert testimony. Without supporting testimony, Phillips has not stated a claim of deliberate indifference. *See Alexander v. Fed. Bureau of Prisons*, 227 F. Supp. 2d 657, 666 (E.D. Ky. 2002).

2. **First Amendment Claims Against CCS, Dr. Lewis, and Dr. Clifford**

In order for a plaintiff to succeed on a first amendment retaliation claim, a plaintiff must prove: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two". *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999).

Phillips claims he has been denied treatment due to the filing of this lawsuit. In support, he relies on a statement made in a response to Phillips' Motion for Preliminary Injunction. In that response, Defendants stated, "Phillips is, and always was, free to submit a healthcare request and have his care providers reassess the mass in his left calf—but he chose not to do so—preferring litigation instead." [DN 57 at 8.] This filing was made on behalf of Defendants Cookie Crews, Denise Burkett, Correct Care Solutions, LLC, Dr. Lester Lewis and Dr. Shastine Tangilag. [*Id.* at 1.] However, treatment has not been withheld from Phillips when requested.

Defendants made the statement in the filing on April 11, 2018. [DN 57.] At that point, Phillips had not sought any medical treatment regarding his leg since the August 2015 visit with Dr. Tangilag. After the Defendants made the above quoted statement in a filing, Phillips received treatment each time he requested as shown above. The evidence shows that Defendants did not withhold treatment and therefore, Phillips has not shown Defendants took an adverse action. Therefore, this claim must be dismissed.

3. **Phillips' State Law Negligence Claims**

Phillips argues Defendants were negligent on their alleged abandonment of treatment of Phillips.  Phillips further argues that he does not need expert testimony for a jury to reasonably

9

find Defendants abandoned Phillips. In support, Phillips primarily cites to *Johnson v. Vaughn,* 370 S.W. 2d 591 (Ky. 1963).

In *Johnson,* the Court stated,

> "It is a rule of general acceptance that a physician is under the duty to give his patient all necessary and continued attention as long as the case requires it, and that he should not leave his patient at a critical stage without giving reasonable notice or making suitable arrangements for the attendance of another physician, unless the relationship is terminated by dismissal or assent. Failure to observe that professional obligation is a culpable dereliction."

It is true that "malpractice can be proved without expert testimony 'where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts.'" *Engle v. Clarke,* 346 S.W.2d 13, 16 (Ky. 1961) (quoting *Butts v. Watts,* 290 S.W.2d 777, 779 (Ky. 1956)). In the case at bar however, the Court does not find this case to present one of those circumstances. Phillips does not have expert testimony to show he was abandoned by Defendants. Unlike *Johnson* where the defendant failed to render immediate emergency care, Phillips received treatment whenever requested. Phillips was not treated in the manner he preferred. However, as this Court has previously stated Phillips has not presented any evidence that Defendants acted negligently. Phillips went more than two years without complaining of leg pain. Once he filed the proper complaints within the prison system, he was treated internally. Without evidence that Defendants' treatment plan was negligent, Phillips cannot sustain his claim.

## B. Exhaustion of Administrative Remedies

Defendants argue Phillips failed to exhaust his administrative remedies prior to filing this claim. However, the Court has dismissed Phillips' claims on the merits and therefore does not need to address this argument.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [DN 162] is **GRANTED**.

**IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 9, 2020

cc: counsel