UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE No. 5:16-cv-00088-TBR

DONALD R. PHILLIPS                                                                    PLATINTIFF

v.

SHASTINE TANGILAG, MD, *et al.,*                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Plaintiff Donald Phillips' ("Phillips") Motion for Summary Judgment on Liability. [DN 168.] Defendants have responded. [DNs 176, 186, 190.] Phillips has replied. [DNs 183, 196, 197.] However, the Court has already dismissed Defendants Jefferson, Clifford, Lewis and Correct Care Solutions from this action. [DNs 222, 228.] Therefore, the Court will only consider Phillips' Motion as it relates to Defendant Dr. Tangilag. For the following reasons, **IT IS HEREBY ORDERED** that Phillips' Motion for Summary Judgment on Liability [DN 168] is **DENIED**.

Dr. Tangilag has also filed a Motion for Summary Judgment. [DN 169.] Phillilps has responded. [DN 185.] Dr. Tangilag has replied. [DN 199.] As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Dr. Tangilag's Motion for Summary Judgment [DN 169] is **GRANTED**.

**I. Background**

Phillips filed this lawsuit pursuant to 42 U.S.C § 1983 on June 16, 2016. [DN 1.] Phillips asserts claims under the First, Fifth, Eighth, and Fourteenth Amendments. [DN 89 at 9.] He also asserts state law claims of ordinary negligence and medical negligence. [*Id.* at 10.]

In 2014, Phillips was assaulted by another inmate and suffered an injury to his left leg. [DN 1 at 4.] On May 20, 2014, Phillips filed a sick call stating he was suffering from "leg swelling and

discolored from calf to ankle." [DN 164 at PageID 2023.] May 26, 2014, Phillips was seen, and he stated, "swelling has improved." [*Id.* at PageID 2030.] Further, he denied "any numbness, tingling, loss of [range of motion] or weakness. Denies any pain." [*Id.*] It was recommended that Philips elevate his leg "as much as possible." [*Id.*]

On November 26, 2014, Phillips filed a healthcare request stating, "I have a lump in my left calf that is growing larger: from the size of an egg (appx.) to the size of a racquet ball". [*Id.* at PageID 2044.] Phillips was seen on December 11, 2014 by Dr. Tangilag to address this concern. [*Id.* at PageID 2034-2035.] Dr. Tangilag noted the mass was approximately five inches in diameter and ordered an ultrasound. [*Id.*] Phillips had the ultrasound on February 3, 2015. [*Id.* at PageID 2040.] The ultrasound found a soft tissue mass in the area of concern with good blood flow." [*Id.*] A CT Scan was recommended. [*Id.*]

On March 13, 2015, Phillips received an off-site CT scan at Western Baptist Hospital in Paducah, Kentucky. [DN 164 at PageID 2042.] The findings were as follows: "A palpable marker was placed on the skin at the region of the abnormality. Between the gastrocnemius and soleus muscles, there is a heterogeneous fluid collection. This is in the normal course of the plantaris muscle and likely represents a plantaris rupture. There is no evidence of fracture or worrisome osseous lesion. No soft tissue lesions are identified. The visualized tendons and ligaments appear intact." [*Id.*] The impression was a "[p]robable plantaris rupture in the left lower leg." [*Id.*] Dr. Tangilag met with Phillips after the CT scan results were obtained and informed him that the results would be forwarded to Dr. Jefferson, an outside orthopedic surgeon, "to see if this is something surgical that needs to be fixed. Other than the pain and the lump, he [Phillips] has full use of his leg (able to plantar flex) which is consistent with the CT scan finding." [*Id.* at PageID 2032.]

2

Dr. Jefferson saw Phillips in his office on July 3, 2015 for an examination of Phillips' left leg. [*Id.* at PageID 2036.] Dr. Jefferson indicated that the lump on Phillips' left leg was a hematoma. [*Id.*] In his own words, a hematoma is "bleeding that happens in the nonvascular space, like under the skin or deep to the fascia in a muscle belly. It's just basically a large collection of hemorrhagic blood." [DN 56-5 at 12.] In Dr. Jefferson's estimation, Phillips ruptured his plantaris and the hematoma was likely the resultant effect of that injury. [*Id.*] During his examination of Phillips, Dr. Jefferson attempted to aspirate the mass, a technique wherein the treating physician inserts a syringe into the affected area to remove any fluid that has built up there. [DN 164 at PageID 3026.] Dr. Jefferson noted that "[n]o appreciable fluid was identified consistent with the diagnosis of chronic hematoma posterior aspect of the left leg." [*Id.*] Dr. Jefferson recommended that Phillips be given an MRI to determine what his options were. [*Id.*] The MRI was given on August 11, 2015. [*Id.* at PageID 2037.] The MRI indicated that the amount of fluid in Phillips' left calf had "slightly decreased since his previous CT" scan. [*Id.*] No mass was identified. [*Id.*]

Dr. Tangilag's meeting notes from August 19, 2015, wherein she talked with Phillips, state the following: "Dr. Ted Jefferson (Orthopedics) called last week stating that he does not need further treatment from a surgical standpoint. The hematoma is resolving." [*Id.* at PageID 2031.] Dr. Tanglilag also noted Phillips said he had "contacted an orthopedic surgeon for a second opinion because he still 'wants to be treated.'" [*Id.*] Dr. Jefferson represented that if the hematoma did not resolve, Phillips needed to return for re-evaluation. [DN 150-2 at 16: 10-17.] Phillips contends Dr. Tangilag did not inform him that he would need to be reassessed if the hematoma did not resolve. He states he understood Dr. Tangilag's statement that he needed no further treatment from a surgical standpoint as denying him any further treatment.

3

Dr. Jefferson received a letter from Phillips approximately two months later stating the pain had not subsided and he had not received treatment. [DN 160-5 at PageID 1309-1310.] Dr. Jefferson did not respond to Phillips letter. [DN 150-2 at 20: 3-8.] Phillips argues Defendants have denied him the treatment Dr. Jefferson recommended.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonable find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. Discussion

#### A. Merits of Phillips' Claims

##### 1. Eighth Amendment Claim Against Dr. Tangilag

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992).

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The objective component mandates a sufficiently serious medical need. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 897 (quoting *Gaudreault v. Municipality of Salem,* 923 F.2d 203, 208 (1st Cir. 1990)). The subjective component regards prison officials' state of mind. *Id*. The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted). "[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001).

The Sixth Circuit has also noted that in the context of deliberate-indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Verifying medical evidence is required when claims involve "minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore*, 390 F.3d at 898.

The Court previously found Phillips pled enough facts to evidence a serious medical need. [*See* DN 222.] Phillips argues he is entitled to summary judgment because Dr. Jefferson stated Phillips would need to be reassessed if the hematoma did not resolve and Dr. Tangilag refused to provide Phillips treatment. Dr. Tangilag argues she is entitled to summary judgment because Phillips did not submit a sick call request after his August 2015 appointment and Phillips has not provided any evidence that any action by Dr. Tangilag caused him further injury. The Court agrees with Dr. Tangilag.

"Deliberate indifference is a state of mind akin to criminal recklessness: the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (internal quotations omitted). Here, Phillips did not file a sick call related to his leg injury for more than two years after his appointment with Dr. Tangilag. Phillips belief that he would be denied treatment if requested is not enough to excuse his failure to seek any treatment for that period of time.

Dr. Tangilag left her job at Correct Care Solutions in October of 2016. [DN 186-2 at 7]. This is a little more than a year after her last appointment with Phillips in August of 2015. During this time, Phillips did not file any sick call request. Dr. Jefferson informed Dr. Tangilag that the

6

hematoma was resolving, and he did not need surgical treatment at that time. [DN 164 at 2031]. At the time of her departure, Dr. Tangilag had no reason to know Phillips' hematoma was not resolving due to his failure to file any medical request. Therefore, Phillips has not met his burden of proof with regard to his claim of deliberate indifference.

Further, "to successfully bring a claim for deliberate indifference to his serious medical needs under the Eighth Amendment, Wooler must not only show the existence of (1) a serious medical need, and (2) deliberate indifference to that need by the Defendants, but also (3) a causal connection between the Defendants' deliberate indifference and his injuries." *Wooler v. Hickman Cty., Kentucky*, 2008 WL 5412826, at *8 (W.D. Ky. Dec. 30, 2008), *aff'd sub nom. Wooler v. Hickman Cty., Ky.*, 377 F. App'x 502 (6th Cir. 2010). Here, Phillips has not provided any evidence of a causal connection between Dr. Tangilag's actions and his current pain. Without such evidence, Phillips cannot sustain his claim.

### 2. First Amendment Claim Against Dr. Tangilag

In order for a plaintiff to succeed on a first amendment retaliation claim, a plaintiff must prove: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two". *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999).

Phillips claims he has been denied treatment due to the filing of this lawsuit. In support, he relies on a statement made in a response to Phillips' Motion for Preliminary Injunction. In that response, Defendants stated, "Phillips is, and always was, free to submit a healthcare request and have his care providers reassess the mass in his left calf—but he chose not to do so—preferring litigation instead." [DN 57 at 8.] This filing was made on behalf of Defendants Cookie Crews,

Denise Burkett, Correct Care Solutions, LLC, Dr. Lester Lewis and Dr. Shastine Tangilag. [*Id.* at 1.] However, treatment has not been withheld from Phillips when requested.

This statement was made by attorneys in a brief on April 11, 2018. [DN 57]. At that point, Phillips had not sought any medical treatment regarding his leg since the August 2015 visit with Dr. Tangilag. Phillips argues he was not reassessed after this statement was made; however, the record shows otherwise.

Phillips filed a Healthcare Request regarding his left leg on April 30, 2018. [DN 165 at PageID 2141.] Phillips was seen on May 2, 2018 and Ibuprofen was prescribed. [*Id.*] Later that same day, an ultrasound was ordered. [*Id.* at PageID 2056.] An ultrasound was performed the next day and found "[n]o evidence for deep venous thrombosis…[and] [t]he Doppler waveforms were unremarkable." [*Id.* at PageID 2136.] Phillips was seen on May 17, 2018 to go over the ultrasound and was to follow-up as needed. [DN 166 at PageID 2260-2261.]

Phillips was seen again on August 1, 2018 and APRN Hughes referred Phillips to physical therapy. [DN 167 at PageID 2299-2300.] After several sessions of physical therapy, Phillips informed the physical therapist that therapy was working because he no longer had "the numbness after walking a distance." [*Id.* at PageID 2292.] Phillips was discharged from therapy a few days later because he stated he was "[n]ot going to get better until [he got] that surgery the one doctor said I needed." [*Id.* at PageID 2289.] Phillips again asked to be re-evaluated for surgery on his leg. [DN 164 at PageID 2014.] Phillips was seen by Dr. Clifford on October 9, 2018. [DN 166 at PageID 2224.] During that appoint Dr. Clifford informed "the plantaris muscle isn't responsible for much and with his age there would not be anyone that would even try to fix that muscle. This happened in 2014 and if it was to be fixed it should have been done there." [*Id.*] Dr. Clifford then reviewed Phillips' medical file and opined that the "[t]reatment plan was sound at that time." [*Id.*]

Phillips was informed that "[n]o surgical intervention is needed or recommended. This plan of care NSAIDs, continue PT exercises as instructed is in keeping with latest evidence based practice." [*Id.* at PageID 2225.]

There is no evidence that Phillips was denied treatment due to his pending lawsuit by Dr. Tangilag. Phillips' statement that Dr. Tangilag has retaliated against him without further evidence is not enough to sustain his claim. Phillips was reassessed multiple times. He just was not reassessed by Dr. Jefferson. As such, this claim must be dismissed.

### 3. Phillips' State Law Negligence Claims

Phillips argues Defendants were negligent on their alleged abandonment of treatment of Phillips. Phillips further argues that he does not need expert testimony for a jury to reasonably find Defendants abandoned Phillips. In support, Phillips primarily cites to *Johnson v. Vaughn,* 370 S.W. 2d 591 (Ky. 1963).

In *Johnson,* the Court stated,

> "It is a rule of general acceptance that a physician is under the duty to give his patient all necessary and continued attention as long as the case requires it, and that he should not leave his patient at a critical stage without giving reasonable notice or making suitable arrangements for the attendance of another physician, unless the relationship is terminated by dismissal or assent. Failure to observe that professional obligation is a culpable dereliction."

It is true that "malpractice can be proved without expert testimony 'where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts.'" *Engle v. Clarke,* 346 S.W.2d 13, 16 (Ky. 1961) (quoting *Butts v. Watts,* 290 S.W.2d 777, 779 (Ky. 1956)). In the case at bar however, the Court does not find this case to present one of those circumstances. Phillips does not have expert testimony to show he was abandoned by Dr. Tangilag. Unlike *Johnson* where the defendant failed to render immediate emergency care, Phillips received treatment whenever requested. Phillips was not treated in the manner he preferred.

9

However, as this Court has previously stated Phillips has not presented any expert evidence that Dr. Tangilag acted negligently. Phillips went more than two years without complaining of leg pain. Once he filed the proper complaints within the prison system, he was treated internally. Without evidence that Dr. Tangilag's treatment—or alleged lack of treatment—of Phillips was negligent, Phillips cannot sustain his claim.

## B. Exhaustion of Administrative Remedies

Dr. Tangilag argues Phillips failed to exhaust his administrative remedies prior to filing this claim. However, the Court has dismissed Phillips' claims on the merits and therefore does not need to address this argument.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Phillips' Motion for Summary Judgment [DN 168] is **DENIED** and Dr. Tangilag's Motion for Summary Judgment [DN 169] is **GRANTED**. A separate judgment will follow.

**IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

September 23, 2020

cc: counsel